COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| WAYNE WRIGHT, INDIVIDUALLY, | § | |
| AND WAYNE WRIGHT, LLP, D/B/A | | No. 08-14-00303-CV |
| WAYNE WRIGHT INJURY LAWYERS, | § | |
| | | Appeal from the |
| Appellants, | § | |
| | | 243rd Judicial District Court |
| v. | § | |
| | | of El Paso County, Texas |
| ERIKA V. HERNANDEZ, | § | |
| | | (TC# 2014DCV1123) |
| Appellee. | § | |

**O P I N I O N**

Erika Hernandez sued attorney Wayne Wright and his law firm, Wayne Wright, LLP,[1] for wrongful termination. Wayne Wright moved to compel arbitration and to abate the proceedings pending arbitration. Hernandez did not file a response. Following a hearing, the trial court denied the motion. In this interlocutory appeal, Wayne Wright contends the trial court erred in denying its motion, because it met its burden to establish the existence of a valid, enforceable arbitration agreement, despite its failure to sign the agreement. We agree and conclude there is no evidence that the parties intended Wayne Wright's signature to be a condition precedent to the enforcement of the agreement. We therefore reverse and remand for entry of an order compelling arbitration.

---

[1] Collectively referred to as "Wayne Wright."

**BACKGROUND**

Wayne Wright hired Hernandez as a paralegal in September 2009.[2] Hernandez worked for Wayne Wright until her termination in February 2012. Hernandez complained to the Texas Commission on Human Rights that, among other things, she was wrongfully terminated for medical complications arising from her pregnancy. After receiving her notice of right to sue from the Commission, Hernandez filed suit against Wayne Wright asserting claims for wrongful termination and sexual discrimination.

Wayne Wright filed a motion to compel arbitration. Wayne Wright attached to its motion a document entitled "Confidentiality and Arbitration Agreement," which Wayne Wright claimed governed the parties' dispute. The arbitration agreement stated it was between "Wayne Wright, LLP (the 'Employer')" and "Erika Hernandez (the 'Employee')," and contained a hand-written date of "9/21/09." The initials, "EH," appeared at the bottom of each page, and the signature of "Erika Hernandez" appeared on the last page of the agreement, under the signature block for "Employee." The last page of the agreement also included a signature block for "Employer: Wayne Wright, LLP," but no signature was affixed thereto. Above the signature block, the agreement contained the following statement: "EXECUTED in Bexar County, Texas by all parties on this the date hereinabove first recited." The initials for Wayne Wright or Wayne Wright's representative did not appear anywhere on the document. Wayne Wright failed to attach to its motion any supporting affidavits or other evidence to authenticate the document.

In its motion to compel arbitration, Wayne Wright asserted that Hernandez's claims for wrongful termination and sexual discrimination came within the scope of the arbitration

---

[2] Wayne Wright asserts Hernandez was hired on September 21, 2009, the same day she signed the arbitration agreement. Neither party, however, produced evidence verifying the date Hernandez first started her employment.

agreement and requested the trial court to order Hernandez to arbitrate her claims. The trial court

set Wayne Wright's motion for hearing on Thursday, October 30, 2014. Hernandez did not file a

written response to the motion before the hearing. Instead, on the day of the hearing, Hernandez's

counsel advised the trial court he had prepared a "memorandum of law" to present to the court,

which presumably argued that Wayne Wright had failed to properly authenticate the arbitration

agreement.[3]

　　After Wayne Wright's counsel objected that he had not previously been given a copy of the

memorandum of law, the following dialogue occurred between Wayne Wright's counsel and the

trial court:

> MR. MENA: Judge, first of all, I would say that there's been no response filed for this motion. This is the first time I've seen this plaintiff's memorandum of law regarding the requirements for this – to compel arbitration per the local rules. I would ask that the Court either not consider plaintiff's argument and plaintiff's motion or allow me to continue the argument and supplement that with an affidavit to prove this document up.
>
> THE COURT: Whatever you wish.
>
> MR. MENA: Either way is fine, Judge. It's up to you. I would prefer to continue the argument.
>
> THE COURT: That's fine.
>
> MR. MENA: Thank you, Judge. We'll bring an affidavit proving this document at a later date.

Counsel for Hernandez did not object to Wayne Wright's offer to supplement its motion.

Hernandez's counsel also did not dispute that Hernandez's claims came within the scope of the

arbitration agreement. Instead, he asserted that Wayne Wright had failed to present any evidence,

such as a sponsoring witness, to authenticate the arbitration agreement.

---

[3] Although the memorandum of law was discussed at the hearing, a copy of the memorandum does not appear in the appellate record.

Hernandez's attorney also argued that Wayne Wright had failed to present any evidence that Hernandez's signature on the document was genuine. In response, Wayne Wright's attorney acknowledged that he had no "personal knowledge" that Hernandez had signed the agreement, but offered to "remedy" this deficiency by providing an affidavit addressing that issue post-hearing. In addition, Wayne Wright's counsel pointed out that Hernandez had not filed a written response disputing the signature on the agreement was not genuine.

During the hearing, the trial court questioned whether the parties' agreement was a binding contract in light of Wayne Wright's failure to sign the agreement. Hernandez's attorney also addressed this issue, referring to Wayne Wright's failure to sign the agreement as a "glaring defect." Counsel argued that this deficiency rendered the agreement unenforceable, as there was no "meeting of the minds" or any indication that Wayne Wright intended to be bound by the agreement. He further argued that by failing to sign the agreement, Wayne Wright was in a position to unilaterally and arbitrarily determine, in any given situation, whether it would seek to enforce the agreement, which improperly allowed Wayne Wright to "have it both ways."

In response, Wayne Wright's attorney argued that Texas law does not require an employer to sign an arbitration agreement if there is sufficient evidence to establish that there was a meeting of the minds and that both parties intended to be bound by the agreement. Wayne Wright's counsel further argued that the parties' intent could be inferred from the facts that Wayne Wright drafted the agreement, presented it to Hernandez to sign, and kept the agreement as a business record.

Hernandez's counsel asked the trial court to deny Wayne Wright's motion to compel arbitration in light of the "complete lack of evidence before the Court" to establish the existence of

a valid arbitration agreement. In response, Wayne Wright's counsel asked the trial court to take the matter "under advisement" and to allow him to "file an affidavit proving up the agreement." The trial court did not directly respond to counsel's request, and instead asked the parties if they had "[a]nything further?" Hernandez's counsel thereafter once again pointed to Wayne Wright's failure to authenticate the arbitration agreement, and in response, Wayne Wright's attorney yet again acknowledged this deficiency, but advised the trial court that he "would still like to file the affidavit." Hernandez's counsel neither objected nor responded to Wayne Wright's request to supplement the record.

Before the hearing adjourned, both parties tendered proposed orders to the trial court, and the court advised the parties that it would make its decision within 48 hours, but no later than the following Monday morning, at which time the court would "sign one of these [orders]." The hearing adjourned after this final exchange between Wayne Wright's counsel and the trial court:

> MR. MENA: How would you like me to get the affidavit to you as quickly as possible?

> THE COURT: See my coordinator.

> MR. MENA: Yes, sir.

On Friday afternoon, October 31, 2014, Wayne Wright filed affidavits from Jana Hajduk, Wayne Wright's Human Resource Manager, and from Harold T. McCaull, Jr., Wayne Wright's Chief of Operations. In her affidavit, Hajduk stated that she was attaching the parties' nine-page arbitration agreement, that she had personal knowledge that the agreement had been prepared by Wayne Wright, and that Hernandez had executed the agreement on September 21, 2009. Hajduk further expressed that the signature appearing on the document was in fact Hernandez's signature,

5

averring that she was familiar with Hernandez's signature through Hernandez's employment with the Wayne Wright law firm. In his affidavit, McCaull stated that the agreement had been "created and kept" by Wayne Wright in the regular course of its business, and that the copy attached was an exact duplicate of the original.

In addition, Wayne Wright provided the trial court with a brief to its position that the agreement was valid and binding on both parties despite the lack of Wayne Wright's signature on the agreement. Wayne Wright asserted that: "It is clear from the facts and circumstances surrounding the Agreement that Wayne Wright LLP and Erika V. Hernandez intended for this Agreement to be a valid, binding, and enforceable contract which both parties could rely upon during Plaintiff's employment with Wayne Wright LLP."[4]

On Monday, November 3, 2014, the trial court signed the order presumably tendered by Hernandez's attorney denying Wayne Wright's motion to compel arbitration. The order did not specify the basis of the trial court's decision.

## DISCUSSION

This appeal involves two primary issues: (1) whether Wayne Wright properly authenticated the arbitration agreement; and (2) if so, whether Wayne Wright established the arbitration agreement was valid and enforceable absent its signature. We conclude that Wayne Wright properly authenticated the arbitration agreement and established the arbitration agreement was valid and enforceable absent its signature. Accordingly, we reverse the trial court's denial of arbitration.

### Standard of Review

---

[4] Wayne Wright's notice of supplemental evidence and brief contained certificates of service indicating they had been served on Hernandez's counsel via facsimile and by e-mail on Friday, October 31, 2014. Hernandez did not file a response to Wayne Wright's supplemental filings.

6

We review a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard. *Ellman v. JC Gen. Contractors,* 419 S.W.3d 516, 520 (Tex.App. – El Paso 2013, no pet.). Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009); *Ellman,* 419 S.W.3d at 520; *ReadyOne Indus., Inc. v. Carreon,* 458 S.W.3d 621, 623 (Tex.App. – El Paso 2014, no pet.). Under the abuse of discretion standard, we can reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Lucchese, Inc. v. Rodriguez,* 388 S.W.3d 354, 361 (Tex.App. – El Paso 2012, no pet.) (citing *Low v. Henry,* 221 S.W.3d 609, 614 (Tex. 2007)).

**Wayne Wright Met Its Burden to Establish the Authenticity of the Agreement**

The arbitration agreement stated that it was to be governed by the Texas Arbitration Act. A party seeking to compel arbitration under the Texas Arbitration Act must: (1) establish the existence of a valid, enforceable arbitration agreement; and (2) show that the claims asserted fall within the scope of that agreement. *Rachal v. Reitz,* 403 S.W.3d 840, 843 (Tex. 2013). The Texas Supreme Court, as well as this Court, has repeatedly held that the party seeking arbitration has the initial burden to establish the existence of a valid arbitration agreement. *See, e.g., J.M. Davidson v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003); *United Rentals, Inc. v. Smith,* 445 S.W.3d 808, 812 (Tex.App. – El Paso 2014, no pet.).

Once the validity of an arbitration agreement has been established, there is a presumption in favor of arbitration, and the burden then shifts to the party opposing the agreement to raise an affirmative defense to the enforcement of the agreement. *In re Oakwood Mobile Homes, Inc.,*

7

987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding), *abrogated on other grounds by, In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex. 2002) (orig. proceeding); *In re Bunzl USA, Inc*., 155 S.W.3d 202, 209 (Tex.App. – El Paso 2004, orig. proceeding).   However, while there is a strong presumption in favor of arbitration, it arises only after a valid arbitration agreement is proven to exist.  *J.M. Davidson*, 128 S.W.3d at 227; *United Rentals, Inc.,* 445 S.W.3d at 812.   Further, when we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement.   *United Rentals, Inc.,* 445 S.W.3d at 812.

Wayne Wright contends it met its initial burden to establish the existence of a valid, enforceable agreement and that Hernandez's dispute came within the scope of that agreement.   Hernandez does not contend her dispute is outside the scope of the purported arbitration agreement;[5] instead, Hernandez – at least in her initial brief – argues only that Wayne Wright attached the arbitration agreement to its motion to compel without providing any evidence to authenticate the agreement or her signature on the agreement, thereby rendering the agreement inadmissible.

We agree that Wayne Wright initially failed to properly authenticate the arbitration agreement when it first filed its motion to compel.   Authenticity is a prerequisite to admissibility.   "Simply attaching a document to a pleading neither makes the document admissible as evidence, dispenses with proper foundational evidentiary requirements, or relieves a litigant of complying

---

[5] Our review of the record reveals that Hernandez's claims for wrongful termination and sexual discrimination did in fact come within the scope of the arbitration agreement.   The arbitration agreement expressly stated that "claims of discrimination, harassment or retaliation" and "wrongful termination" were included within the scope of the agreement.

8

with other admissibility requirements." *United Rentals Inc.*, 445 S.W.3d at 814. A document may only be considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the requirements of self-authentication as set out in TEX.R.EVID. 902. *Id.* at 813. The arbitration agreement was not a self-authenticating document under Rule 902, and therefore Wayne Wright was required to provide a sponsoring witness to vouch for its authenticity.

Wayne Wright contends it properly authenticated the agreement when it submitted the two affidavits post-hearing from its human resources manager and its chief of operations. Our resolution of whether the agreement was properly authenticated by this post-hearing evidence rests on two separate questions: (1) whether the supplemental affidavits sufficiently authenticated the agreement; and (2) whether the supplemental affidavits were properly before the trial court and properly made a part of the appellate record. We answer both questions in the affirmative.

*The Supplemental Affidavits were Sufficient to Authenticate the Arbitration Agreement*

In *United Rentals, Inc. v. Smith,* this Court held that a party seeking to enforce a motion to compel arbitration is allowed to authenticate a purported arbitration agreement in a "number of ways," including by reliance on a sponsoring witness's testimony, an affidavit, or even an unsworn declaration. 445 S.W.3d at 813. We further recognized that the "predicate for admissibility under rule 901 may be proven by circumstantial evidence." *Id.*

Hernandez relies almost exclusively on *United Rentals, Inc.* for the proposition that Wayne Wright failed to properly authenticate the arbitration agreement.[6] Unlike the proponent of the

---

[6] In *United Rentals,* we concluded that an employer had failed to properly authenticate an arbitration agreement where the only evidence submitted was an unsworn declaration of the employer's human resource director, who failed to directly vouch for the agreement's authenticity. *Id.* at 814. Moreover, we noted that during the trial court's hearing in that case, the employee presented evidence affirmatively calling into question the authenticity of the parties' purported agreement. *Id.* at 810-11. We also found it significant that the employer failed to present any evidence to establish the genuine nature of the employee's signature on the agreement. *Id.* at 814. Based on these facts, we concluded that the employer failed to carry its burden to establish the existence of a valid arbitration agreement. *Id.*

agreement in *United Rentals,* Wayne Wright presented two affidavits that expressly referenced the parties' nine-page arbitration agreement, verified that the agreement was an exact duplicate of the original agreement, and verified that the agreement had been kept by Wayne Wright in the regular course of its business. Further, in contrast to the facts in *United Rentals*, there is nothing in the record to suggest that the agreement submitted by Wayne Wright was not the original agreement signed by Hernandez.

In addition, there is nothing in the record to indicate that Hernandez ever challenged or contested the genuineness of her signature on the document. *See* TEX.R.CIV.P. 93(7) (denying the execution of an instrument in writing must be verified by affidavit, and in the absence of same, "the instrument shall be received in evidence as fully proved"). Nevertheless, Wayne Wright's human resource manager, Jana Hajduk, addressed this issue in her affidavit, averring that she had personal knowledge that Hernandez had signed the agreement and stating that Hernandez's signature on the document was genuine based on her experience with Hernandez during the course of her employment. Although we note that a party is not required to produce evidence to establish the genuine nature of a signature on an arbitration agreement in the absence of a sworn challenge to the signature, Rule of Evidence 901(b)(2) expressly permits a nonexpert witness, such as Hajduk, to provide testimony that "handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation."

Despite being served with copies of these affidavits authenticating the agreement, Hernandez did not attempt to present any countervailing evidence disputing the truth or validity of any of the statements made in Wayne Wright's supplemental affidavits. Therefore, assuming that the affidavits were properly filed and considered by the court, we conclude that they were

10

sufficient, as a matter of law, to authenticate the arbitration agreement.

*The Supplemental Affidavits were Properly before the Trial Court*

Hernandez's initial brief completely ignored the post-hearing affidavits that Wayne Wright had filed in the trial court, and instead focused solely on Wayne Wright's initial failure to authenticate the arbitration agreement when it first filed its motion to compel arbitration. With this Court's permission, Hernandez filed a sur-reply brief addressing the effect of Wayne Wright's supplemental affidavits. In her sur-reply brief, Hernandez does not dispute that these affidavits, if properly filed, would be sufficient to authenticate the arbitration agreement; instead, she contends that the affidavits were not properly filed, and therefore cannot be considered part of the appellate record. Hernandez correctly points out that without properly-filed affidavits authenticating the arbitration agreement, we would have no choice but to conclude that the trial court properly denied Wayne Wright's motion to compel arbitration under our holding in *United Rentals*.

In arguing the supplemental affidavits were not properly admitted, Hernandez seeks to analogize this case to a jury trial in which a party proffers additional evidence after the court has closed the evidence and submitted the case to the jury. Hernandez asserts that a party challenging a jury's verdict is not entitled to argue that the jury should have considered late-filed evidence in rendering its verdict; she then reasons that, by analogy, Wayne Wright is not entitled to argue that the trial court should have considered its supplemental affidavits in rendering its decision denying Wayne Wright's motion to compel arbitration.

Hernandez's reliance on the rules governing jury trials, however, is misplaced. We have previously held that a proceeding on a motion to compel arbitration is a pretrial matter, and that the civil rules governing jury trials are inapplicable. *Lucchese, Inc.,* 388 S.W.3d at 363-64. In

11

*Lucchese*, the trial court initially denied an employer's motion to compel arbitration based on its conclusion that the arbitration agreement that the employer had attached to its motion was "illusory." The employer subsequently filed an amended motion to compel, attaching a different arbitration agreement not previously presented to the court. The employee successfully moved to strike the amended motion, arguing, among other things, that the employer was not allowed to "reopen" the evidence under TEX.R.CIV.P. 270. We noted, however, that Rule 270 is "one of nine rules found in the section of the Rules of Civil Procedure addressing the conduct of trial." *Id.* We therefore concluded that Rule 270 had no application to a pretrial proceeding to compel arbitration, and that the trial court therefore abused its discretion when it granted the employee's motion to strike the amended motion on that basis. Similarly, in the present case, we conclude Rule 270 does not bar the trial court's consideration of Wayne Wright's supplemental affidavits filed after the hearing on the motion to compel arbitration. *Id.*

Hernandez also contends Wayne Wright's supplemental affidavits were not properly filed because Wayne Wright "chose not to follow the procedure for admitting evidence under Rule of Evidence 104[.]" In particular, Hernandez cites to Rule 104(a), which gives a trial court the authority to decide "any preliminary question" regarding the admissibility of evidence. Although her argument is somewhat unclear, Hernandez appears to believe that Rule 104(a) requires a trial court to make an "express" ruling in every instance before it admits evidence, and that a court's failure to do so means that the evidence cannot be deemed to be "part of the record."[7] Hernandez

---

[7] Hernandez also cites to *Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969) for the proposition that Wayne Wright was required to secure a "clear, specific trial court order, on the record" before being allowed to file its supplemental evidence. The opinion in *Dunn*, however, is not helpful to our analysis. In *Dunn*, the Court addressed whether a trial court's oral pronouncement of judgment in a divorce proceeding could be considered a final judgment in a case in which one of the parties died before the issuance of the court's final written judgment. The Supreme Court determined that the trial court's oral ruling was a valid judgment under those circumstances, and that the issuance of a written judgment was simply a "ministerial act." There is nothing in the *Dunn* opinion addressing exactly what

12

then reasons that because the trial court did not make an "express ruling" on Wayne Wright's request to file supplemental affidavits, we must conclude that the trial court did not properly admit or consider those affidavits. Hernandez's argument, however, fails in several respects.

First, we note that Rule 104(a) appears to be a rule that pertains solely to preliminary determinations made regarding the admissibility of evidence at trial, rather than to the admissibility of evidence submitted in support of a motion to compel arbitration. *See Ford v. State,* 305 S.W.3d 530, 534-36 (Tex.Crim.App. 2009) (noting that Rule 104(a) is based on longstanding common-law principles that give a trial judge an important "gatekeeping" role to ensure that evidence "admitted at trial" is relevant, reliable, and admissible under the pertinent legal principles). Further, we note that in the present proceeding neither party asked the trial court to make a preliminary determination pursuant to Rule 104(a). Instead, Wayne Wright simply asked the court for permission to file supplemental evidence in support of its motion to compel arbitration. As such, we question whether Rule 104(a) has any applicability to the present case.

Moreover, even assuming Rule 104 applies, there is nothing in the Rule that requires a trial court to make an express ruling or to use any special language in making a determination regarding the admissibility of evidence. We believe that the real question in this case is whether the record as a whole reflects that the trial court made a ruling allowing Wayne Wright to file its supplemental evidence in support of its motion to compel arbitration, and whether we may ultimately consider the affidavits as being a part of the appellate record for purposes of conducting our de novo review of the validity of the arbitration agreement. *See Oryx Energy Co. v. Union Nat. Bank of Tex.,* 895 S.W.2d 409, 417 (Tex.App. – San Antonio 1995, pet. denied) ("[c]ourts

constitutes an adequate oral ruling in any given case.

13

should not decide cases based on the inclusion or omission of 'magic words.' Instead decisions should be based upon the facts as recited in the record as a whole.").

In making this determination, we find it instructional to look to cases in which parties have filed supplemental evidence in summary judgment cases to determine what showing is necessary to establish that a trial court intended to allow supplemental evidence into the record. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex. 1992) (courts should look to summary judgment procedures in resolving motions to compel arbitration); *In re Bunzl USA, Inc.,* 155 S.W.3d at 207 (agreeing that a trial court should follow summary judgment procedures in considering a motion to compel arbitration)*; see also In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex.App. – Houston [14th Dist.] 2000, orig. proceeding) ("A summary motion to compel arbitration is essentially a motion for partial summary judgment, subject to the same evidentiary standards.").

Even in summary judgment proceedings, where the rules provide for strict deadlines in filing responses and supporting evidence, TEX.R.CIV.P. 166a(c) allows a judge to admit late-filed evidence upon "leave of court." In such cases, we have held that when a trial court does not expressly grant leave to file supplemental pleadings, and there is "no affirmative evidence in the record" to indicate that the trial court intended to grant such leave, we must "presume that the trial court did not consider the response, and therefore, we cannot consider it on appeal." *E.B.S. Enter., Inc. v. City of El Paso,* 347 S.W.3d 404, 407-08 (Tex.App. – El Paso 2011, pet. denied); *see also INA of Tex. v. Bryant,* 686 S.W.2d 614, 615 (Tex. 1985) (court would not consider late-filed response to summary judgment motion where "nothing appears of record to indicate that the late filing was with leave of court"). On the other hand, our sister courts have noted that when an "affirmative" showing is made that the trial court granted leave of court, late-filed pleadings and

14

evidence will be deemed to have been properly filed and considered by the trial court. *See Auten v. DJ Clark, Inc.,* 209 S.W.3d 695, 702 (Tex.App. – Houston [14th Dist.] 2006, no pet.) (where trial court's order stated that it had considered a late-filed affidavit in a summary judgment proceeding, this constituted an affirmative indication that the affidavit was considered by the court and properly made a part of the record); *Oryx Energy Co.,* 895 S.W.2d at 412 n.3 (leave of court was established by record where trial court's order specifically stated that it gave parties the right to file supplemental pleadings and that it had considered the evidence attached to those pleadings).

In determining what constitutes sufficient "affirmative evidence" to indicate that a trial court granted leave to file late pleadings or evidence, other Texas courts have looked to the record as a whole, and have noted that, "[p]ermission to file a response late may be reflected in a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing." *Pipkin v. Kroger Texas, L.P.,* 383 S.W.3d 655, 663 (Tex.App. – Houston [14th Dist.] 2012, pet. denied); *see also Stephens v. Dolcefino,* 126 S.W.3d 120, 134 (Tex.App. – Houston [1st Dist.] 2003, pet. denied) (the trial judge's oral ruling at a hearing indicating that it was accepting supplemental evidence sufficed to demonstrate that the evidence was properly admitted and considered); *Morris v. JTM Materials, Inc.,* 78 S.W.3d 28, 47, n.19 (Tex.App. – Fort Worth 2002, no pet.) (supplemental affidavits were properly made a part of the record where the trial court orally stated during a hearing on a motion for new trial that it would allow them into evidence in determining whether to reconsider its decision granting summary judgment).

In the present case, the trial court did not issue a separate written order or recite in its judgment that it had considered the supplemental affidavits submitted by Wayne Wright.

15

However, our review of the reporter's record of the hearing affirmatively demonstrates that the trial court intended to accept and consider Wayne Wright's supplemental evidence.

Wayne Wright made numerous requests during the hearing to supplement its motion with the necessary affidavits to authenticate the parties' purported arbitration agreement. In response, the court made several statements throughout the hearing indicating that it intended to allow Wayne Wright to file the supplemental evidence. For example, at the start of the hearing, when Wayne Wright's attorney sought permission to continue its argument and to later "supplement" its motion with an affidavit authenticating the arbitration agreement, the trial court responded: "That's fine." Similarly, at the close of the hearing when the judge announced that it would render its decision no later than the following Monday, Wayne Wright's attorney asked the trial court how he could get the affidavit to the court "as quickly as possible," the trial court responded: "See my coordinator."

We conclude that these statements, taken as a whole, affirmatively demonstrate that the trial court intended to allow Wayne Wright to file its supplemental affidavits prior to the Monday deadline. Because Wayne Wright filed its supplemental affidavits well in advance of the trial court's deadline, we conclude that the affidavits were properly filed in accordance with the trial court's implied ruling giving Wayne Wright permission to do so.

Hernandez asserts that even if the trial court intended to allow the supplemental affidavits into evidence, it should not have done so, as Wayne Wright did not "authenticate" the affidavits prior to their submission. Wayne Wright points out, however, there is no rule that requires a party to authenticate an affidavit of this nature prior to its submission into evidence. In fact, TEX.R.EVID. 902(10) provides that a business record accompanied by affidavit attesting to the

16

record's authenticity is considered to be self-authenticating, and the Rule provides no separate requirement that the affidavit itself be independently authenticated. In addition, the Texas Supreme Court has held that when deciding whether to grant a motion to compel arbitration, a trial court must "accept as true the clear, direct, and positive evidence of an undisputed affidavit, even of a party's agent." *Jack B. Anglin Co., Inc.,* 842 S.W.2d at 270. Hernandez never disputed the accuracy or the authenticity of the affidavits submitted by Wayne Wright. We therefore conclude that the affidavits were properly admitted into evidence and considered by the trial court.

**Wayne Wright's Signature was not a Condition Precedent to the Enforceability of the Arbitration Agreement**

The remaining issue centers on the effect of Wayne Wright's failure to sign the parties' arbitration agreement, and whether this renders the agreement unenforceable.

We have repeatedly held that arbitration agreements are "creatures of contract," and courts must therefore apply "standard contract principles to determine whether a valid arbitration agreement exists." *In re Bunzl USA, Inc.*, 155 S.W.3d at 209; *Nazareth Hall Nursing Ctr. v. Melendez*, 372 S.W.3d 301, 305 (Tex.App. – El Paso 2012, no pet.). An employer attempting to enforce an arbitration agreement must therefore show that the agreement meets all requisite contract elements in accordance with standard contract principles. *United Rentals, Inc.,* 445 S.W.3d at 812. The elements of a valid contract, including agreements to arbitrate, are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id*.

Under standard contract principles, the presence or absence of a party's signature on a written contract is relevant to determining whether there was an intent for an agreement to be binding; therefore, the fact that a party has signed a contract creates a "strong presumption" that

17

the party has assented to the terms of an agreement. *In re Bunzl USA, Inc.,* 155 S.W.3d at 208-10; *see also Rachal v. Reitz,* 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests its assent by signing an agreement.") However, the absence of a party's signature does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of a contract.[8] *Thomas J. Sibley, P.C. v. Brentwood Inv. Dev. Co. L.P.,* 356 S.W.3d 659, 663 (Tex.App. – El Paso 2011, pet. denied); *In re Bunzl USA, Inc.,* 155 S.W.3d at 209; *In re Big 8 Food Stores, Ltd.,* 166 S.W.3d 869, 876 (Tex.App. – El Paso 2005, orig. proceeding).

Moreover, the Texas Arbitration Act itself does not require a party's signature on an arbitration agreement in order to be enforceable, and instead only requires that the agreement be in writing. TEX.CIV.PRAC.&REM.CODE ANN. § 171.001(a) (West 2011) ("A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that: (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement."). The Act requires signatures only when the parties have entered into an acquisition contract for property or services for less than $50,000 and in cases in which the parties have agreed to arbitrate a personal injury claim. TEX.CIV.PRAC.&REM.CODE ANN. § 171.002 (West 2011); *see In re*

---

[8] Wayne Wright contends Hernandez argued below that Wayne Wright's failure to sign the agreement rendered the agreement "illusory." Hernandez's counsel never used that term, and instead asserted that Wayne Wright's failure to sign was evidence that there was no "meeting of the minds" or lack of an intent to be bound. Wayne Wright also contends Hernandez argued that the arbitration agreement was "illusory" because it contained a modification provision that allowed Wayne Wright to amend or terminate the agreement with ten days' notice. We note that there is no record of Hernandez making this argument. Nevertheless, Wayne Wright is correct in asserting that the parties' modification provision did not render the arbitration agreement illusory, as the provision contained a "savings clause," stating that "any such amendment or termination shall not be effective as to disputes for which a proceeding has been initiated pursuant to this Article prior to the date of the amendment or termination, unless agreed to in writing by both the Employer and the Employee." The presence of a savings clause of this nature means that the employer cannot avoid its promise to arbitrate pre-existing disputes, and it thereby "saves" the agreement from being illusory. *In re ReadyOne Indus., Inc.,* 400 S.W.3d 164, 170-71 (Tex.App.– El Paso 2013, orig. proceeding).

18

*AdvancePCS Health L.P.,* 172 S.W.3d at 606, n.5 (concluding that signature requirement was not applicable in circumstances other than those listed in section 171.002).

The Texas Supreme Court has therefore repeatedly held that neither the Texas Arbitration Act nor the Federal Arbitration Act requires an employer's signature on an arbitration agreement for it to be valid "so long as [the agreement is] written and agreed to by the parties." *In re Polymerica, LLC*, 296 S.W.3d 74 (Tex. 2009). In *Polymerica*, the Court expressly stated that it has "never held that the employer must sign the arbitration agreement before it may insist on arbitrating a dispute with its employee." *Id.* at 76. In this regard, the Court cited *In re AdvancePCS Health, L.P.,* 172 S.W.3d 603, 606 n.5 (Tex. 2005), which held that the Texas Arbitration Act requires signatures only for contracts of less than $50,000 or personal injury claims, and that virtually all other arbitration agreements are enforceable as long as they are in writing even in the absence of the parties' signatures.

This Court has similarly noted that Texas law is in accord with decisions applying the Federal Arbitration Act, holding that the FAA does not require that the agreement be signed by the parties. *In re Bunzl USA, Inc*., 155 S.W.3d at 210; *see also Sec. Serv. Fed. Credit Union v. Sanders,* 264 S.W.3d 292, 301 (Tex.App. – San Antonio 2008, no pet.) (there is no requirement under the FAA or Texas law that an arbitration agreement be signed so long as it is written and agreed to by the parties); *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.,* 849 S.W.2d 380, 392 (Tex.App. – Houston [14th Dist.] 1993, writ denied) (the Texas Arbitration Act does not require that an arbitration agreement be signed by the parties in order for it to be valid except in two specific instances); *Paramount Rehab & Health/PHCC v. Matthews,* No. 04-10-00194-CV, 2010 WL 2935787, at *3 (Tex.App. – San Antonio July 28, 2010, no pet.) (the absence of

Paramount's signature from the arbitration agreement was "inconsequential" where the agreement was in writing as required by the Act).

Nevertheless, the parties to an arbitration agreement may express their intent to require a signature as a condition precedent to the agreement's enforceability. Thus, when the terms of the contract make it clear that a signature is required, a party's failure to sign the agreement will render the agreement unenforceable. *See Simmons & Simmons Constr. Co. v. Rea,* 286 S.W.2d 415, 418-19 (Tex. 1955) (the evidence did not support a jury's verdict enforcing a contract where one of the parties had not signed the agreement, the contract contained a signature block; the contract itself stated that the parties' signatures had to be notarized, and the contract was given to one of the party's with directions to sign it and return to the other party for signing); *Lujan v. Alorica,* 445 S.W.3d 443, 448-49 (Tex.App. – El Paso 2014, no pet.) (when a contract expressly requires a signature prior to it becoming binding, the existence of the instrument is destroyed by the other party's failure to sign the instrument); *W. Texas Hospitality, Inc. v. Enercon Int'l, Inc.,* No. 07-09-0213-CV, 2010 WL 3417845, at *5 (Tex.App. – Amarillo Aug. 31, 2010, no pet.) (agreement expressly required the signature of both parties and stated that it would be "binding upon all parties the date [Enercon] dates and signs the duplicate originals, which date shall be the 'execution date of Agreement.'").[9]

Conversely, when there is no evidence in the record to suggest that the parties intended for a signature to be a condition precedent to the signing of an agreement, then a party's failure to sign

---

[9] *See also Copeland v. KB Home,* No. Civ.A.3:03-CV-227-L, 2004 WL 1778949, at *2-3 (N.D. Tex. Aug. 4, 2004) (the "plain, unequivocal language of the arbitration provision in question establishes that the parties intended and expected the Agreement to be *initialed* and signed as a condition precedent for the formation of an arbitration agreement," and the employer's failure to do so rendered the agreement unenforceable); 1 Arthur Linton Corbin, Corbin on Contracts § 2.10 at 165 (Joseph M. Perillo rev. 1993) (parties to a contract may direct that a signature of each party is a prerequisite to the formation of a binding written contract).

20

the agreement does not render the agreement unenforceable, as long as it appears that the parties otherwise gave their consent to the terms of the agreement. *See ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.,* 115 S.W.3d 287, 292 (Tex.App. – Corpus Christi 2003, pet. denied) (where the parties gave their consent to the terms of the contract, and there was no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures were not a required factor in the making of a valid contract); *Valero Ref., Inc. v. M/T Lauberhorn,* 813 F.2d 60, 63-64 (5th Cir. 1987) (parties were bound by an arbitration agreement that the employer had failed to sign, where there was nothing in the parties' contract requiring a signature, and where there was sufficient evidence in the record to uphold the trials court's finding that the parties assented to the agreement); *Watson v. Willbros Grp., Inc.,* No. 4:15CV114, 2015 WL 1546349, at *7 (E.D. Tex. Apr. 6, 2015) (signatures were not a required factor in the making of a valid contract as long as the parties give their consent to the terms of the contract, where there was no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract); *Perez v. Lemarroy*, 592 F.Supp.2d 924, 931 (S.D. Tex. 2008) (where there was no language in the agreement indicating that it would not become effective until employer signed the agreement, it was enforceable against the employee, who signed the agreement, in the absence of the employer's signature).

The pivotal question in this case then is whether Wayne Wright's signature was a condition precedent to the enforceability of the arbitration agreement. For the reasons set forth below, we conclude that it was not.

This Court was faced with a similar question in *In re Bunzl USA, Inc*., where the employer was seeking to enforce an arbitration agreement signed by the employee but not by the employer.

21

155 S.W.3d at 210-11. The trial court concluded that the agreement was not enforceable in the absence of the employer's signature. On appeal, the employer argued that it had presented sufficient evidence to meet its burden that the agreement was a valid and binding contract. In particular, the employer pointed to an affidavit it had submitted from its human resources manager, averring that the arbitration agreement was a true and accurate copy of the parties' employment agreement, that the agreement was kept in the employee's "employment jacket" so that it could be reviewed if questions arose regarding the parties' rights and obligations under the agreement; and that she personally reviewed the agreement before the employee was terminated to ensure that the employer acted in accordance with its obligations under the agreement. We noted that this was "some evidence" that the employer considered itself bound by the agreement despite its failure to sign the agreement. *Id.* at 211.

However, in *Bunzl*, we concluded that there was "conflicting evidence" regarding whether the parties intended for the employer to sign the agreement before it would become effective. *Id.* In particular, we found it significant that the parties' agreement contained a signature block intended for the employer's signature, which was never signed. We also found it significant that the agreement specifically stated that, "No modification or amendment of any provision of this Agreement is effective unless it is in writing and signed by the parties to this Agreement." *Id.* We determined that, "[t]his provision and the blank signature block are evidence that the parties did not intend to be bound until both parties signed the Agreement." *Id.* In light of this "conflicting evidence" regarding the parties' intent to be bound by the agreement in the absence of the employer's signature, we concluded the lower court could have "reasonably concluded" that the employer's signature was a "prerequisite" or condition precedent to the enforceability of the

22

agreement. *Id*. at 212. Because of this, we declined to disturb the lower court's finding on appeal.

In *Scaife*, the Fifth Circuit Court of Appeals reached a similar conclusion in a case in which the parties' contract contained signature blocks, as well as the following language above the block: "IN WITNESS WHEREOF, the parties have caused this agreement to be executed by their duly authorized representative at Dallas, Texas, on the date first above written." *Scaife v. Associated Air Ctr. Inc.,* 100 F.3d 406, 411 (5th Cir. 1996). Although the layout of the signature block in the contract in *Scaife* was similar to the one in the present case, two additional factors distinguish *Scaife* from the present case. In *Scaife*, the parties' contract also contained a modification clause similar to the one in *Bunzl*, stating that no party "could alter or amend the contract except in writing signed by both parties." *Scaife,* 100 F.3d at 410. In addition, the contract in *Scaife* also contained a clause indicating that one third of the contract price was due *upon signing*, which clearly evidenced the parties' intent that the agreement be signed prior to its enforceability. *Id.* The Court therefore concluded that "the parties intended to manifest their assent to this agreement through a formal written contract signed by both parties," and that, in the absence of the party's signature, no contract was ever formed. *Id.* at 411.

In contrast to both *Bunzl and Scaife,* the parties' agreement in the present case did *not* contain any provision expressly requiring that the agreement itself or any modifications to the agreement be signed by the parties, and there are no other references in the agreement indicating that Wayne Wright's signature was contemplated as a condition precedent to the agreement's enforceability. Moreover, Hernandez presented no evidence to establish that the parties otherwise agreed that the agreement would not become effective until Wayne Wright also signed.

Because we conclude that the presence of a signature block in a contract, standing alone is insufficient to establish that a party's signature is a condition precedent to the enforceability of a contract, we conclude that the trial court did not have sufficient evidence from which it could have reasonably concluded that Wayne Wright's signature was a condition precedent to the enforceability of the parties' agreement. *See generally Tricon Energy Ltd. v. Vinmar Int'l, Ltd.,* 718 F.3d 448, 454-55 (5th Cir. 2013) (a blank signature line is not necessarily proof in and of itself that the parties required formal signatures for a contract to be binding).

Further, Wayne Wright produced evidence to establish the parties' assent to the agreement. As we noted in *Bunzl*, in the absence of a signature on a contract, a court may look to other evidence to establish the parties' assent to the terms of the contract. *Bunzl,* 155 S.W.3d at 209; *see also Lujan,* 445 S.W.3d at 448-49 ("[w]hen a party's signature is absent, other evidence must be presented to prove the party unconditionally and mutually assented to the terms of the contract"); *Tukua Inv., LLC v. Spenst,* 413 S.W.3d 786, 794 (Tex.App. – El Paso 2013, pet. denied) (in the absence of a signature on a contract, we look to other evidence to establish whether the nonsignatory party may be bound by the contract). As Wayne Wright correctly asserts, a parties' intent to be bound by a contract may be evidenced by its conduct at the time a contract is drafted and by its subsequent conduct reflecting that it was acting in accordance with the terms of the contract. *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 774 (Tex.App. – Beaumont 2008, orig. proceeding); *MG Building Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61-62 (Tex.App. – San Antonio 2005, pet. denied); *see also Thomas J. Sibley, P.C.,* 356 S.W.3d at 663 (a party may accept a contract, and indicate its intent to be bound to the terms of the contract, by its acts and conduct in accordance with the terms thereof).

24

In determining whether an employer intended to be bound by an arbitration agreement in the absence of the employer's signature on the agreement, courts have considered various actions taken by the employer, including the employer's act of drafting the arbitration agreement, its actions in maintaining the agreement as a business record, and its actions in moving to enforce the agreement when the employee filed suit against it. *See Dish Network L.L.C. v. Brenner,* No. 13-12-00564-CV, 2013 WL 3326640, at *5 (Tex.App. – Corpus Christi 2013, no pet.) (trial court's order denying motion to compel arbitration was reversed as an abuse of discretion, where the undisputed evidence established that the employer intended to be bound by an unsigned agreement based, in part, on the fact that the employer drafted the agreement and required all of its employees to sign the agreement prior to working at the company); *In re Brown & Root, Inc.,* No. 05-98-00689-CV, 1998 WL 325692, at *2 (Tex.App. – Dallas June 18, 1998, orig. proceeding) (employer who failed to sign arbitration agreement evidenced its intent to be bound by the agreement by, among other things, drafting the arbitration agreement and seeking arbitration).

In *Bunzl*, we noted that an affidavit provided by the employer's human resource manager averring that the arbitration agreement was a true and correct copy of the agreement signed by the employee, and that the agreement was kept by the employer as a business record, was "some evidence" that the employer intended to be bound by the agreement. However, in *Bunzl*, we also found that there was "conflicting evidence" demonstrating that the parties did not intend to be bound by the arbitration agreement until it was signed by both parties in light of the clause in the agreement requiring that all modifications of the agreement be in writing. 155 S.W.3d at 211-12. Because of this conflicting evidence, we declined to disturb the trial court's finding that the agreement was not enforceable in the absence of the employer's signature. *Id.* at 212.

25

In the present case, however, the trial court was not presented with any such conflicting evidence. Wayne Wright presented the trial court with affidavits from two of its employees, averring that Wayne Wright prepared the parties' arbitration agreement, presented the agreement to Hernandez for her signature, maintained the agreement as a business record after Hernandez was hired, and then sought to enforce the agreement after Hernandez filed her lawsuit. Further, Hernandez failed to present any evidence controverting the affidavits or any evidence to establish that the parties did not intend for the agreement to become enforceable until Wayne Wright signed the agreement. Unlike the contract in *Bunzl*, there is nothing on the face of the agreement requiring the agreement itself or any modifications to the agreement to be signed by the parties.

Accordingly, there was no conflicting evidence presented in the court below to suggest that Wayne Wright did not intend to be bound by the agreement in the absence of its signature. We conclude that Wayne Wright met its burden to establish the existence of a valid arbitration agreement, and that the trial court abused its discretion by denying Wayne Wright's motion to compel arbitration.

## CONCLUSION

We reverse the trial court's order denying Wayne Wright's motion to compel arbitration, and remand this matter to the trial court to enter an order consistent with this opinion. The stay order issued by this Court on February 18, 2015, will remain in effect pending further action by the trial court.

STEVEN L. HUGHES, Justice

July 17, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

26