**REVERSE and REMAND; and Opinion Filed July 21, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00776-CV

**BLANE LADYMON, METRO TOWNHOMES LIMITED PARTNERSHIP, METRO TOWNHOMES AND HOMES, INC. AND LADYMON & ASSOCIATES, INC.,**
**Appellants**
**V.**
**JACK LEWIS AND ALAN COLVIN, Appellees**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-15-02323-B**

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and Stoddart
Opinion by Justice Bridges

Blane Ladymon, Metro Townhomes Limited Partnership, Metro Townhomes and Homes, Inc. (Metro), and Ladymon & Associates (Ladymon) appeal the trial court's denial of their motion to compel arbitration in the underlying lawsuit. In two issues, Metro and Ladymon argue the trial court erred in denying its motion to compel arbitration, and appellees' attempt to enforce performance under the construction contract constitutes estoppel of any defense to the arbitration clause. We reverse and remand for further proceedings consistent with this opinion.

In May 2015, appellees sued Metro and Ladymon, alleging they contracted with Metro for the construction of a home, but the home was not as represented, not of proper quality, and was not designed and/or constructed in a good and workmanlike manner. Specifically, appellees alleged their home was damaged by failure of the supports from the second to third floors of the

home. Appellees further alleged Ladymon designed the home, including the supports from the second to third floors, but did not have the design reviewed by a licensed architect or a structural engineer.

Appellees asserted against Metro claims of negligence, gross negligence, negligent misrepresentation, breach of contract, breach of warranty, violation of the Texas Deceptive Trade Practices Act (DTPA), fraud, fraudulent inducement, and fraud in a real estate transaction. Appellees asserted against Ladymon claims of negligence and breach of warranty.

Metro and Ladymon filed an original answer and a motion to abate the case until appellees complied with the requirements of the Residential Construction Liability Act. On September 21, 2015, the trial court granted Metro's motion to abate. In January 2016, Metro and Ladymon filed their motion to compel binding arbitration in which they argued, pursuant to the contracts between the parties, that all disputes were subject to binding arbitration. However, due to the passage of time, Metro and Ladymon were unable to produce copies of the design contract or the builder construction contract. Instead, Metro and Ladymon attached copies of contracts they claimed accurately represented the contracts signed by appellees. The motion was supported by the affidavit of Blane Ladymon which stated, in part, as follows:

> 8. After a diligent search, I could not locate a fully executed copy of the Design Contract, in part, due to passage of more than fourteen years since creation of the Design Contract and more than twelve years since execution of same. However, after examining Exhibit B attached to Defendants' Plea in Abatement and Motion to Compel Arbitration, I am of the belief that Exhibit B truly and accurately represents the Design Contract that Plaintiffs signed and otherwise agreed to prior to start of any design work by Designer.

> 11. Prior to the start of construction, Builder prepared the NEW RESIDENTIAL CONSTRUCTION CONTRACT WITH BUILDER'S AND MECHANIC'S LIEN – FIXED PRICE ("Builder Construction Contract"), attached to Defendants' Plea in Abatement and Motion to Compel Arbitration as Exhibit "E" and presented the same to Plaintiffs along with its standard Customer Service Manual, Restrictive Covenant and Agreement, the applicable performance standards under NAHB, and the Limited Warranty.

13. At the closing, I signed the documents discussed in the preceding paragraph on behalf of the Builder, and thereafter received a copy of the fully executed contract documents after Plaintiffs also executed the same, including the Builder Construction Contract, the Homeowner's Guide, the Restrictive Covenant Agreement, Builder's Limited Warranty, as well as the Bank's Lien Contract.

The Builder Construction Contract contained the following provision regarding arbitration:

**18. MEDIATION-ARBITRATION/LIMITATION OF CLAIMS.** It is the policy of the State of Texas to encourage the peaceable resolution of disputes through alternative dispute resolution procedures. Owner and Contractor hereby agree that any controversy or claim or matters in question between the parties including, but not limited to, any matter arising out of or relating to (a) this Contract, and any amendments thereto, (b) any breach thereof, (c) the construction transaction reflected in the Contract, (d) the design or construction of the Improvements, (e) any alleged fraud, misrepresentations or breach of warranties, express or implied, (f) claims for defective design or construction of the Improvements, (g) intentional and/or negligent infliction of emotional distress, (h) violations of the Texas Deceptive Trade Practices-Consumer Protection Act, (i) violations of the Texas Residential Construction Liability Act, and/or (j) any other cause of action relating to or arising out of the construction and/or sale of the Improvements by Contractor, (herein referred to collectively as a "Dispute"), shall be submitted to mediation with the American Arbitration Association ("AAA") where the parties will endeavor to resolve the Dispute in an amicable manner. In the event any Dispute cannot be resolved by mediation, the Dispute shall be submitted to the AAA for binding arbitration pursuant to Title 9 of the United States Code, which the parties hereto acknowledge and agree applies to the transaction involved herein, and in accordance with the Construction Industry Arbitration Rules of the AAA or such other rules as the AAA may deem applicable. If Title 9 of the United States Code is in applicable to any such claim, dispute or controversy for any reason, such arbitration shall be conducted by the AAA pursuant to Chapter 171 of the Texas Civil Practice and Remedies Code and in accordance with the Construction Industry Arbitration Rules of the AAA or such other rules as the AAA may deem applicable. In any such arbitration proceeding: (i) all federal and state law (including Chapter 27 of the Texas Property Code) and all statutes of limitations which would otherwise be applicable shall apply, and (ii) the proceeding shall be conducted by a single arbitrator. The arbitrator shall be selected by the process of appointment from a panel pursuant to the applicable procedures of the AAA. Any award rendered in any such arbitration proceeding shall be final and binding, and judgment upon any such award may be entered in any court having jurisdiction.

The limited warranty contained in the Home Owner's Guide also provided for arbitration of disputes:

17. Any disputes between YOU and US, or parties acting on OUR behalf, related to or arising from this AGREEMENT, the design or construction of the HOME or

the COMMON ELEMENTS or the sale of this HOME or transfer of to the COMMON ELEMENTS will be resolved by binding arbitration. Binding arbitration shall be sole remedy for resolving any and all disputes between YOU and US, or OUR representatives, employees, subcontractors, independent contractors, or agents. Disputes subject to binding arbitration include, but are not limited to:

1. Any disagreement or dispute regarding whether a condition in the HOME or the COMMON ELEMENTS is a CONSTRUCTION DEFECT and is therefore covered by this AGREEMENT;

2. Any disagreement or dispute as to whether a CONSTRUCTION DEFECT has been corrected in compliance with this AGREEMENT;

3. Any alleged breach of this AGREEMENT;

4. Any alleged violation of consumer protection, unfair trade practice, or any other statute;

5. Any allegation of negligence, strict liability, fraud, and/or breach of duty of good faith, and any other claims arising in equity or from common law;

6. Any dispute concerning the issues that should be submitted to binding arbitration

7. Any dispute concerning the timelines of OUR performance and/or PURCHASER'S notifications under this AGREEMENT;

8. Any dispute as to the payment or reimbursement of the arbitration filing fee;

9. Any dispute as to whether this AGREEMENT, or any provision thereof, including, but not limited to any waiver hereunder, is unenforceable;

10. Any other claim arising out of or relating to the sale, design or construction of PURCHASER'S HOME or the COMMON ELEMENTS, including, but not limited to any claim arising out of, relating to or based upon any implied warranty or claim for negligence or strict liability not effectively waived by this AGREEMENT.

The limited warranty further provided that it was governed by the Federal Arbitration Act "to the exclusion of any inconsistent state law, regulation or judicial decision."

Appellees filed a response in which they objected to the "evidence" attached to Metro's motion on the basis that "none of the 'evidence' is authenticated and all is hearsay." Appellees objected that the statements in Ladymon's affidavit regarding Exhibit B accurately representing the Design Contract appellees signed, Ladymon's and appellees' signing of the Bank's Lien

–4–

Agreement, and Metro's practice of requiring arbitration of any claims in agreements with homeowners were "irrelevant, constitute[d] hearsay and violate[d] the best evidence rule." Appellees moved to strike Metro's "evidence" and Ladymon's affidavit and argued arbitration could not be compelled because there was no written agreement between the parties that required arbitration. The response was supported by the affidavits of appellees who both stated, "I do not recall signing any documents with Defendants prior to construction of my home other than documents relating to construction financing" and "I do not recall signing any documents with Defendants requiring Arbitration." The trial court denied Metro and Ladymon's motion to compel arbitration, and this appeal followed.

In their first issue, Metro and Ladymon argue the trial court erred in denying their motion to compel arbitration. Specifically, they argue they conclusively established a valid arbitration agreement governed by the Federal Arbitration Act, and they conclusively established appellees' claims are within the scope of the arbitration agreement.

A person seeking to compel arbitration must first establish the existence of an arbitration agreement subject to the FAA and show that the claims raised fall within the scope of that agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005); *Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.). If the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *Id.* If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.* A strong presumption favoring arbitration arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *Id.*

Arbitration agreements are creatures of contract, and courts must therefore apply standard contract principles to determine whether a valid arbitration agreement exists. *Wright v. Hernandez*, 469 S.W.3d 744, 756 (Tex. App.—El Paso 2015, no pet.). A party attempting to enforce an arbitration agreement must, therefore, show that the agreement meets all requisite contract elements in accordance with standard contract principles. *Id.* The elements of a valid contract, including agreements to arbitrate, are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.*

Appellees argue there is no evidence of a signed agreement evidencing appellees' intent to submit its claims to binding arbitration. However, the absence of a party's signature does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of a contract. *Id.*; *Tukua Invs., LLC v. Spenst,* 413 S.W.3d 786, 794 (Tex. App.–El Paso 2013, pet. denied). If a contract is not signed by a party, then other evidence may be used to establish the nonsignatory's unconditional assent to be bound by the contract, including any arbitration provision. *Spenst*, 413 S.W.3d at 794.

Ladymon's affidavit established that Metro presented to appellees the builder's construction contract attached as Exhibit E to its motion to compel arbitration. The builder's construction contract required arbitration of all causes of action relating to or arising from the design, construction, or sale of the home. A closing was scheduled where Ladymon signed the contract documents, and he later received a copy of the fully executed contract documents after appellees executed the documents, including the builder's construction contract. Thus, Ladymon's affidavit established the existence of a contract between Metro, Ladymon, and appellees and the arbitration provision therein. *See Wright*, 469 S.W.3d at 756. All of appellee's claims are within the scope of the arbitration provision. *Roe*, 318 S.W.3d at 510.

Appellees objected that some of the statements in Ladymon's affidavit were "irrelevant, constitute[d] hearsay and violate[d] the best evidence rule." However, appellees did not obtain a ruling on this objection. An objection that an affidavit contains hearsay is an objection to the form of the affidavit. *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.). The failure to obtain a ruling from the trial court on an objection to the form of an affidavit waives the objection. *Id.*

In response to Metro and Ladymon's motion to compel arbitration, appellees filed affidavits stating they "do not recall" signing any documents other than documents relating to financing and "do not recall" signing documents requiring arbitration. To have probative value, an affiant "must swear that the facts presented in the affidavit reflect his personal knowledge." *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (quoting *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 224 (Tex. 2004)). An affiant's belief about the facts is legally insufficient.[1] *Id.* The fact that appellees did not "recall" signing documents requiring arbitration does not contradict Ladymon's assertion that appellees executed the builder's construction contract, which contained an arbitration provision.

Thus, the evidence established a contract between the parties containing a valid arbitration agreement governed by the Federal Arbitration Act. Further the evidence showed that appellees' claims, both as to the design and construction of their home, were within the scope of the arbitration agreement. Under these circumstances, we conclude the trial court erred in denying appellees' motion to compel arbitration. *See Webster*, 128 S.W.3d at 227. We sustain Metro and Ladymon's first issue. Because of our disposition of their first issue, we need not

---

[1] In his affidavit quoted above, Ladymon qualified his statement about the design contract as based on his belief. But his statements about the Construction Contract and the Builder's Limited Warranty were not qualified as based on his belief. We have relied only on the arbitration clauses in the Construction Contract and the Builder's Limited Warranty.

address whether appellees' conduct estopped them from asserting any defense to the arbitration clauses.

We reverse the trial court's order denying Metro and Ladymon's motion to compel arbitration and remand for further proceedings consistent with this opinion.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

160776F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BLANE LADYMON, METRO
TOWNHOMES LIMITED PARTNERSHIP,
METRO TOWNHOMES AND HOMES,
INC. AND LADYMON & ASSOCIATES,
INC., Appellants

No. 05-16-00776-CV      V.

JACK LEWIS AND ALAN COLVIN,
Appellees

On Appeal from the County Court at Law
No. 2, Dallas County, Texas
Trial Court Cause No. CC-15-02323-B.
Opinion delivered by Justice Bridges.
Justices Evans and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion..

It is **ORDERED** that appellants BLANE LADYMON, METRO TOWNHOMES LIMITED PARTNERSHIP, METRO TOWNHOMES AND HOMES, INC. AND LADYMON & ASSOCIATES, INC. recover their costs of this appeal from appellees JACK LEWIS AND ALAN COLVIN.

Judgment entered this 21st day of July, 2017.