**Reversed and Remanded and Majority and Dissenting Opinions filed September 27, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00871-CV

---

## GSC WHOLESALE, LLC D/B/A GROCERS SUPPLY AND THE GROCERS SUPPLY PRODUCE CO., LLC, Appellants

### V.

### ZACH YOUNG, Appellee

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2020-37352**

---

## MAJORITY OPINION

Appellants GSC Wholesale, LLC d/b/a Grocers Supply ("GSC") and the Grocers Supply Produce Co., LLC, ("GSP") appeal the denial of their motion to compel arbitration in the lawsuit brought by appellee Zach Young. In two issues, appellants argue the trial court erred when it denied their motion to compel arbitration. We reverse and remand.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

Young was hired by GSC as a Produce Warehouse Selector on August 7, 2014. On or around June 25, 2019, Young claims he suffered work related injuries when "a fork lift began to roll and pinned" him. Young alleges that this forklift was owned or controlled by GSC and GSP (collectively the "Grocers Supply Parties"). Young filed a lawsuit against the Grocers Supply Parties for negligence, and they responded by filing a Motion to Stay Proceedings and Compel Arbitration. In their motion, the Grocers Supply Parties relied upon the "GSC Wholesale, LLC Mutual Agreement to Arbitrate Occupational Injury and Disease Claims," signed by Young on January 29, 2015 (the "Arbitration Agreement"). The Grocers Supply Parties asserted that the Arbitration Agreement is a valid arbitration agreement between Young and the Grocers Supply Parties and that Young's claims fall within its scope. It is undisputed that neither of the Grocers Supply Parties signed the Arbitration Agreement.

After Young filed a response arguing that GSC did not accept and agree to the arbitration agreement, the Grocers Supply Parties filed a "Reply/Supplement" in which they asserted that though they did not sign the Arbitration Agreement, they had manifested their assent to the Arbitration Agreement by their conduct. The Grocers Supply Parties attached to this supplement a declaration by Susannah Roggi, Senior Director of Risk Management and Claims for C&S Wholesale Grocers, stating that on or before September 1, 2013, the Grocers Supply Parties adopted the Grocers Supply Occupational Injury Benefits Plan (the "Plan"). Roggi testified that under the Plan Young had been paid $84,448.00 as temporary total disability benefits and $39,337.74 as medical benefits as a result of the accident on June 25, 2019.

The Grocers Supply Parties later filed a second declaration from Roggi as

2

additional evidence in support of their motion to compel. Roggi attached to this declaration a copy of the Plan. Roggi said that, as set forth on page 14 of the Plan, the Plan contains a mandatory arbitration provision. Section 3.7(a) of the Plan states: "[t]he Employer and each Employee, in exchange for eligibility to receive Benefits provided under the Plan, employment and such other consideration, will be bound by the 'Mutual Agreement to Arbitrate Occupational Injury and Disease Claims', as provided by the Plan Sponsor in substantially the same form as attached hereto as Appendix C." In this second declaration, Roggi stated that she had reviewed the Arbitration Agreement and that the Arbitration Agreement is in substantially the same form as Appendix C to the Plan.

On December 9, 2020, the trial court held a hearing at which the court heard argument, but no party offered additional evidence or requested an evidentiary hearing. On the next day, the trial court signed an order denying the motion to compel. In its order, the trial court found that:

> the terminology used by Defendant in drafting the agreement "Accepted and Agreed on behalf of the Employer" and the parties [sic] " . . . may mutually agree to amend the Agreement by entering into a written instrument . . . and [sic] executed by the parties" at a minimum creates a conflict in the evidence as to whether the parties to this agreement intended to require Defendant's signature as a condition precedent to the agreement's enforceability. It is Defendant's burden to show a valid enforceable arbitration agreement. This Court[] finds that the evidence presented shows that Defendant's signature was a condition precedent to the agreement's enforceability and hence finds the arbitration agreement unenforceable.

This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.021, and 171.098(a)(1).

## II.   ISSUES AND ANALYSIS

**Did the trial court err in denying the motion to compel?**

On appeal, the Grocers Supply Parties assert that the trial court erred in denying the motion to compel. The Grocers Supply Parties argue in part that they need not rely on the Arbitration Agreement because they may rely upon a similar arbitration agreement contained in the Grocers Supply Parties' "Non-Subscriber Occupational Injury Plan" (the "Non-Subscriber Plan"). The Grocers Supply Parties assert that they may rely on and enforce this arbitration agreement against Young because Young received notice of the terms of the Non-Subscriber Plan and its arbitration agreement and Young specifically agreed to be bound by them.

On appeal, Young argues that the Grocers Supply Parties did not raise this argument based on the Non-Subscriber Plan in the trial court and thus waived it. Young contends that on appeal the Grocers Supply Parties have shifted the focus of their arguments from the Arbitration Agreement that was the basis of the motion to compel to the argument based on the Non-Subscriber Plan and other arguments not raised in the trial court. We begin by addressing the whether the trial court erred in denying the motion to compel based on the Arbitration Agreement.

The Grocers Supply Parties assert that Young signed the Arbitration Agreement and argue that Young's claims fall within the scope of the Arbitration Agreement. The Grocers Supply Parties also contend that even if they did not sign the Arbitration Agreement,[1] they manifested their assent to it by their conduct.

### A.   *Standard of Review*

A trial court's order denying a motion to compel arbitration is reviewed for

---

[1] The Grocers Supply Parties also argue that they fulfilled any alleged signature requirement because one of their employees signed the Arbitration Agreement as a witness to Young's signature. We presume that this argument lacks merit.

4

an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We defer to the trial court's factual determinations if they are supported by evidence, and we review the trial court's legal determinations de novo. *Henry*, 551 S.W.3d at 115.

A party seeking to compel arbitration bears the burden to establish (1) the existence of a valid arbitration agreement, and (2) the claims in dispute fall within the scope of the arbitration agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011); *J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the party seeking arbitration meets its two-pronged burden to establish the agreement's validity and scope, then the burden shifts to the party opposing arbitration to raise a valid defense to the agreement's enforcement, and absent evidence supporting such a defense, the trial court must compel arbitration. *J.M. Davidson*, 128 S.W.3d at 227–28. A trial court's determination as to whether a valid arbitration agreement exists and whether the claims fall within the scope of an arbitration agreement are legal determinations subject to de novo review. *In re Labbat Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). The trial court erred in denying the motion to compel if the evidence before the trial court proved as a matter of law that (1) the Arbitration Agreement is a valid arbitration agreement, and (2) Young's claims against the Grocers Supply Parties fall within the scope of the Arbitration Agreement. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 354 (Tex. 2008). Young has not contended that his claims fall outside the scope of the Arbitration Agreement. Nor has Young disputed that he signed and agreed to the Arbitration Agreement. Rather, Young contends that the only way for an Employer to manifest assent to the Arbitration Agreement is by signing it, and because no Employer

signed the agreement, Young argues that there is no valid arbitration agreement.

### B.     Applicable Law

"Contracts require mutual assent to be enforceable." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Id.*  Neither the Federal Arbitration Act nor Texas law requires that arbitration agreements or clauses be signed, so long as they are written and agreed to by the parties. *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding) (per curiam). Unless the parties explicitly require that a party to an arbitration agreement sign the agreement to manifest the party's assent thereto, a party may manifest its assent to the arbitration agreement by its acts, conduct, or acquiescence in the terms of the agreement, and signing the agreement is not a condition precedent to its enforceability. *See Mid. Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010); *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 392 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

In construing the Arbitration Agreement, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Carter v. Z.B., N.A.*, 578 S.W.3d 613, 618–19 (Tex. App.—Houston [14th Dist.] 2019, no pet.). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless.  *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). Whether an agreement is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.  1996). An agreement is ambiguous when its meaning is uncertain

6

and doubtful or is reasonably susceptible to more than one interpretation. *Id.* But, when a written agreement is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). We cannot rewrite the Arbitration Agreement or add to its language under the guise of interpretation. *See id.* at 162.

### C. The Text of the Arbitration Agreement

The Arbitration Agreement that Young signed on January 29, 2015 provides in part:

*GSC WHOLESALE, LLC*
*MUTUAL AGREEMENT TO ARBITRATE OCCUPATIONAL*
*INJURY AND DISEASE CLAIMS*

**1. Effective Date and Acceptance Date**

The effective date of this Mutual Agreement to Arbitrate ("**Agreement**") is December 28, 2014 (the "**Effective Date**"). This Agreement binds you (the "**Employee**") as well as any other person making a claim subject to this Agreement (together, referred to as "**Claimant**"). This Agreement also binds GSC Wholesale, LLC ("**Plan Sponsor**") and the other Employers (as defined in Section 2). The Plan Sponsor and such other Employers are affiliates of C&S Wholesale Grocers, Inc. that have employees located in the State of Texas. Therefore, this Agreement is mutually binding on both you and any other Claimants and all of the Employers. Other terms with initial capital letters are defined in Section 2 of this Agreement.

If you, the Employee, commence employment or reemployment with an Employer on or after the Effective Date [December 28, 2014], *your first day of employment or reemployment will automatically constitute your acceptance of all the terms and conditions of this Agreement*, that is, your acceptance date ("Acceptance Date"). This Agreement is a mandatory and binding condition of your employment with an Employer effective as of your Acceptance Date.

*For any other Employee who was hired by an Employer . . .*

7

*before the Effective Date [December 28, 2014], your continuation of employment with an Employer on or after the Effective Date will constitute your acceptance of all the terms and conditions of this Agreement.* In that situation, your Acceptance Date is the same date as the Effective Date. *This Agreement is a mandatory and binding condition of your employment with an Employer effective as of your Acceptance Date.*

. . .

*If you commence, recommence or continue employment with an Employer*, as of your Acceptance Date, *you and the Employer hereby automatically and mutually agree to resolve any and all Covered Claims* (as defined in <u>Section 2</u>) which occur on or after the Acceptance Date *in accordance with the terms and conditions of this Agreement instead of through the court system.*

## 2. <u>Definitions</u>

(f) "Employer" means each entity which has adopted the Plan, as listed in an Appendix to the Plan or [Summary Plan Description of the Plan]. As of the Effective Date, the Employers are (1) [GSC]; (2) [GSP] . . .

. . . .

**12. <u>Amendment and Termination of Agreement.</u>** The Plan Sponsor has reserved the right and authority to amend or terminate this Agreement at any time without any Claimant's consent; provided, however, any such amendment or termination shall not, in any event, be effective for any Covered Claim for which the incident creating or giving rise to such Covered Claim was incurred prior to such amendment or termination. Any Covered Claim that was incurred prior to the time of such amendment or termination will remain subject to this Agreement as it existed at the time of the incident creating or giving rise to the Covered Claim. The Employer will provide notice of any material amendment of this Agreement to its Employees. In the event of termination of this Agreement, the Employer will provide at least ten (10) days prior notice to Employees before such termination becomes effective. All such notices regarding this Agreement will be provided to Employees in such manner as deemed reasonable by the Employer including, without limitation, by distributing an updated version of the [Summary Plan Description of

8

the Plan] that contains the revised Agreement. Any amendment or termination of this Agreement with respect to former Employees will be effective the same time as for active Employees, without regard to any advance notice requirement. *In addition, the Employer and Claimant, at any time in any particular case, may mutually agree to amend the Agreement by entering into a written instrument that is identified as such an amendment and executed by the parties.*

. . . .

**14. <u>Sole and Entire Agreement.</u>** This Agreement constitutes the parties' complete agreement as to its subject matter, and it supersedes any prior agreement, representation, promise or understanding, but only with respect to any Covered Claim that is subject to this Agreement. Employee acknowledges that he or she is not relying on any statements, representations, or promises, oral or written, on the subject, effect, enforceability or meaning of this Agreement, except as specifically stated in this Agreement.

**15. <u>Ratification of Agreement by Receipt of Plan Benefits.</u>** Employee agrees that each and every time he or she receives Benefits under the Plan, or has such Benefits paid to a medical provider on his or her behalf, Employee ratifies and reaffirms being subject to this Agreement.[2]

The last page of the Arbitration Agreement is a signature page that asks the employee to "Please complete and return to the Employer" and contains a signature block for the employee and a witness. Below the signature block for the employee, the signature page provides:

*<u>Note to Employee</u>: Please sign and return a signed original of this Agreement to the Employer for its records after keeping a copy for your records. However, please note that **the arbitration dispute resolution program, as described in this Agreement, is a mandatory and binding condition of your employment regardless of whether or not you sign or return this Agreement. Your employment and continued employment with an Employer constitutes your acceptance of the terms and conditions of this Agreement. This***

---

[2] (italics added) (boldface and underlining in original).

***Agreement is likewise binding on your Employer.***[3]

Under this text, the signature page in the Arbitration Agreement states in bold "Accepted and Agreed on behalf of the Employer:" and provides a signature block for an individual to sign and date on behalf of the Employer, as well as spaces for the individual's name and title. This signature block is blank. Though Young signed the arbitration agreement, nobody signed the agreement on behalf of the Employer.

### D.    *Interpretation of the Arbitration Agreement*

The trial court concluded that a signature by the Employer on the Arbitration Agreement was a condition precedent to the enforcement of the agreement, effectively concluding that a signature by the parties was the only way for the parties to manifest assent to the Arbitration Agreement. Because the Employer did not sign the Arbitration Agreement, the trial court determined that the Arbitration Agreement is unenforceable and denied the motion to compel. For a signature to be the only way to manifest assent to an agreement, the parties must "explicitly require signatures as a condition of mutual assent"; a blank signature block, by itself, is not an explicit requirement by the parties that assent be manifested only by a signature. *Mid. Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010); *Wright v. Hernandez*, 469 S.W.3d 744, 760 (Tex. App.—El Paso 2015, no pet.).

No language in the Arbitration Agreement says that assent thereto may only be made by signature or that signatures by the parties are a condition precedent to the enforceability of the agreement. The unambiguous text of the Arbitration Agreement explicitly states various times that the parties may assent to the

---

[3] (boldface added) (italics in original).

agreement by conduct, without any signature. Section 1 of the Arbitration Agreement states that for employees like Young, who were hired before December 28, 2014, the employee's "continuation of employment with an Employer on or after [December 28, 2014] will constitute [the employee's] acceptance of all the terms and conditions of [the Arbitration Agreement]." Under section 1, if Young "continue[s] employment with an Employer, as of [December 28, 2014], you and the Employer hereby automatically and mutually agree to resolve any and all Covered Claims (as defined in Section 2) which occur on or after [December 28, 2014] in accordance with the terms and conditions of this Agreement instead of through the court system." If this court were to construe the Arbitration Agreement to require a party to sign the agreement for the party to manifest assent to the agreement, this construction would make the foregoing language meaningless.

On the signature page of the Arbitration Agreement, a note to the Emloyee states that "the arbitration dispute resolution program, as described in this Agreement, is a mandatory and binding condition of your employment regardless of whether or not you sign or return this Agreement. Your employment and continued employment with an Employer constitutes your acceptance of the terms and conditions of this Agreement. This Agreement is likewise binding on your Employer." The plain meaning of "likewise" in this context is "in the same way." *See* Likewise, The American Heritage Dictionary 731 (2d ed. 1991). Under the plain text of the Arbitration Agreement, Young may manifest his assent to the agreement by continuing his at-will employment with GSC, and the Employer may manifest assent to the agreement, in the same way, by allowing Young to continue his at-will employment. Interpreting the Arbitration Agreement to require that the parties manifest assent thereto by signature would render the foregoing language meaningless and would not be reasonable. *See Hirschfeld Steel Co., Inc.*

11

*v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 279–82 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Thus, under the unambiguous language of the Arbitration Agreement, as a matter of law, (1) the parties need not manifest assent by signature; (2) the parties may manifest assent by conduct, through continued at-will employment by the Employee and the Employer allowing the Employee to continue the at-will employment; and (3) the parties' signing the agreement is not a condition precedent to the agreement's enforceability. *See Mid. Continent Cas. Co.*, 323 S.W.3d at 157; *Wright*, 469 S.W.3d at 756–61; *Law Office of Thomas J. Henry v. Cavanaugh*, No. 05-17-00849-CV, 2018 WL 2126936, at *3–4 n.4 (Tex. App.—Dallas 2018, pet. denied) (mem. op.).

The Arbitration Agreement contains signature blocks for the Employee and the Employer, as well as language asking the Employee to sign the Arbitration Agreement. Thus, the Arbitration Agreement allows the parties to manifest assent by signing the agreement, as well as through their conduct.

Young relies on several cases in which a court found that signing an agreement was required to manifest assent or that signing was a condition precedent to the agreement's enforceability, based in part on a provision in the agreement requiring that amendments to the contract be in writing and signed. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688, 689 (5th Cir. 2018) (agreement stated that "[b]y *signing this agreement* the parties are giving up any right they may have to sue each other" and that the agreement "may not be changed, except in writing and *signed by all parties*") (emphasis added); *Smart Call, LLC v. Genio Mobile, Inc.*, No. 14-13-00223-CV, 2014 WL 3955083, at *5 (Tex. App.— Houston [14th Dist.] Aug. 14, 2014, pet. denied) (agreement contained provision requiring amendments to be in writing and signed) (mem op.); *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 211 (Tex. App.—El Paso 2004, orig. proceeding)

12

(agreement contained provision requiring amendments to be in writing and signed). These cases are not on point because no part of the Arbitration Agreement requires that amendments be in writing and signed. *See Wright*, 469 S.W.3d at 761 (distinguishing such cases because agreement at issue did not have provision requiring amendments to be signed). Section 12 of the Arbitration Agreement does require amendments to the agreement to be in writing "and executed by the parties." But, a requirement that amendments be executed is not a requirement that amendments be signed, because a party may execute an agreement either by signature or by conduct. *See Mid. Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 156–58 (Tex. 2010). The trial court relied on section 12 of the Arbitration Agreement as supporting a requirement that assent be manifested by signature. In doing so, the trial court erred. *See id.*

The trial court and Young also attach significance to the notation above the Employer's signature block stating: "Accepted and Agreed on behalf of the Employer." If no notation had been placed above the signature block, a signature by the Employer would manifest the Employer's assent to the Arbitration Agreement and thus the Employer's agreement to and acceptance of the terms of the agreement. Thus, this notation expressly stated what the legal effect of the Employer's signature would be even in the absence of any notation. Though this notation shows that signature is one way by which the Employer may assent to the Arbitration Agreement, nothing in this notation indicates that signature is the only way the Employer may manifest assent. *See Wright*, 469 S.W.3d at 748, 756–61 (holding that there was no requirement that assent be manifested by signature despite the following notation above the unsigned signature block: "EXECUTED in Bexar County, Texas by all parties on this the date hereinabove first recited").

Under the unambiguous language of the Arbitration Agreement, the

agreement does not explicitly require that a party to the agreement sign the agreement to manifest the party's assent thereto, and the Employer may manifest its assent to the agreement by its conduct, for example by allowing Young to continue in his at-will employment. *See Mid. Continent Cas. Co.*, 323 S.W.3d at 157; *Wright*, 469 S.W.3d at 756–61; *Firstlight Federal Credit Union v. Loya*, 478 S.W.3d 157, 167–70 (Tex. App.—El Paso 2015, no pet.).

### E.     The existence of a valid arbitration agreement

The evidence before the trial court proved as a matter of law that (1) Young manifested his assent to the Arbitration Agreement both by signing the Agreement on January 29, 2015 and by continuing in his at-will employment; and (2) GSC manifested its assent to the Arbitration Agreement by its conduct, including by allowing Young to continue in his at-will employment.[4] Thus, as a matter of law, the Grocers Supply Parties proved the existence of a valid arbitration agreement.[5] *See Mid. Continent Cas. Co.*, 323 S.W.3d at 157; *Wright*, 469 S.W.3d at 756–61.

### F.     The Scope of the Arbitration Agreement

If the party seeking arbitration proves a valid arbitration agreement, any doubts as to whether the claims fall within the scope of the arbitration clause must be resolved in favor of arbitration. *See Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). A court should not deny arbitration unless the court can say with positive assurance that an arbitration clause is not susceptible of an

---

[4] The Grocers Supply Parties ask this court to consider a document attached as Appendix B to their opening brief. Because this document is not a part of the appellate record in this case and was not before the trial court when it denied the motion to compel, we do not consider the document in adjudicating this appeal. *See Ginn v. Pierce*, 595 S.W.3d 762, 766 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Marathon Petroleum Co. v. Cherry Moving Co.*, 550 S.W.3d 791, 803 n.6 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

[5] We need not and do not address the Grocers Supply Parties' Non-Subscriber Plan argument, or any other arguments they asserted that we have not addressed in this opinion.

14

interpretation that would cover the claims at issue. *See id.* In determining whether a claim falls within the scope of an arbitration agreement, the court must focus on the factual allegations, rather than the legal claims asserted. *Id.* at 900.

In his live pleading, Young alleges negligence claims against the Grocers Supply Parties based on personal injuries he sustained at the Grocers Supply warehouse in Houston while employed by GSC. Young alleges that a forklift owned or controlled by the Grocers Supply Parties "pinned" Young while he was working in an area managed and controlled by the Grocers Supply Parties. Young seeks to recover personal-injury damages including past and future physical pain, mental anguish, physical impairment and medical expenses.

Under the Arbitration Agreement, Young and the Grocers Supply Parties agreed to arbitrate all "Covered Claims," which, subject to the claims excluded in section 5(b), include "all causes of action and other claims that [the Grocers Supply Parties] or [Young] may have which arise from any bodily injury, occupational disease or cumulative trauma injury incurred by [Young] while in the Course and Scope of Employment on and after the [December 28, 2014], including, but not limited to, claims for (i) negligence . . . (ii) personal injuries (and related losses or damages), physical impairment, disfigurement, dismemberment, pain and suffering, mental anguish, . . . medical and hospital expenses . . . (iii) emotional distress, consequential damages, . . . and (iv) any other loss, damage, detriment, cause of action, or claim of whatever kind or character arising out of, or otherwise related to, a Covered Claim." Without limitation as to other types of Covered Claims, the Arbitration Agreement provides that "a Covered Claim specifically includes (A) any claim or cause of action brought by [Young] against the [Grocers Supply Parties] alleging that negligence by the [Grocers Supply Parties] is or was a cause of a loss, injury, or damage suffered by [Young] as the result of an incident that occurred in the Course and Scope of Employment." The

15

Arbitration Agreement defines "Course and Scope of Employment" to mean "an activity of any kind or character that (1) has to do with and originates in the work, business, trade, or profession of the Employer and (2) is performed by Employee while engaged in or about the furtherance of the affairs or business of the Employer."

Under section 5(b) of the Arbitration Agreement, the parties do not agree to arbitrate "[c]laims for medical, hospital and drug expenses, accidental death or dismemberment, wage continuation and any other direct claims for benefits that are covered or provided under the terms and conditions of the [GSC Wholesale, LLC Texas Occupational Injury Benefits Plan] or under any other employee benefit plan that is subject to the Employee Retirement Income Security Act of 1974 ("ERISA") maintained or adopted by any Employer or its Affiliate." Young has not argued that his claims fall outside of the scope of the Arbitration Agreement. In this lawsuit Young does not assert a claim for benefits under any plan. Even if Young were to argue that his negligence claims do not fall within the scope of the Arbitration Agreement, the following part of the Arbitration Agreement provides clear and unmistakable evidence that the parties agreed to arbitrate the issue of whether any claim by Young is arbitrable: "In the event of a dispute, the question of whether any particular claim is a Covered Claim subject to this Agreement shall be arbitrated pursuant to the procedures set forth in this Agreement." Young has not challenged the validity of this delegation provision. Therefore, this court must allow the arbitrator to decide any question as to whether any claim is a Covered Claim subject to the Arbitration Agreement. *See Taylor Morrison of Texas, Inc. v. Klein*, No. 14-20-00520-CV, 2021 WL 5459222, at *3–4 (Tex. App.—Houston [14th Dist.] Nov. 23, 2021, no pet.) (mem. op.).

Young's claims in this case fall within the scope of the claims that Young and the Grocers Supply Parties agreed to arbitrate in the Arbitration Agreement.

16

*See Baty v. Bowen, Miclette & Britt, Inc.*, 423 S.W.3d 427, 438–41 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). As a matter of law the evidence before the trial court proved that (1) the Arbitration Agreement is a valid arbitration agreement, and (2) Young's claims against the Grocers Supply Parties fall within the scope of the Arbitration Agreement. *See In re Poly-America, L.P.*, 262 S.W.3d at 354. Because the Grocers Supply Parties met this two-pronged burden, the burden shifted to Young to raise a valid defense to the agreement's enforcement. *See J.M. Davidson*, 128 S.W.3d at 227–28. Because Young submitted no evidence supporting such a defense, the trial court was required to compel arbitration. *Id.* Therefore, the trial court erred in denying the motion to compel. *See id*.

### III.  CONCLUSION

The evidence before the trial court proved as a matter of law the Grocers Supply Parties' entitlement to the relief sought in the motion to compel. Therefore, we sustain the second issue and the part of the first issue in which the Grocers Supply Parties assert that the trial court erred in denying the motion to compel.[6] We reverse the trial court's order and remand to the trial court with instructions to the court to issue an order (1) granting the Motion to Stay Proceedings and Compel Arbitration, (2) compelling the arbitration of all of Young's claims in this case, and (3) granting an appropriate stay. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.025; *Wagner v. Apache Corp.*, 627 S.W.3d 277, 288 (Tex. 2021).


/s/     Randy Wilson
        Justice

Panel consists of Justices Wise, Poissant, and Wilson (Poissant, J., dissenting).

---

[6] We need not address the remainder of the first issue.

17