**Opinion issued December 22, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00215-CV

———————————

**NORTHPOINTE LTC, LTD. D/B/A GRACE CARE CENTER AT NORTHPOINTE, Appellant**

**V.**

**DEBBIE A. DURANT, Appellee**

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2018-44284**

## MEMORANDUM OPINION

This is a wrongful termination and premises liability case arising from Appellee's alleged slip and fall at her workplace. In 2018, Appellee Debbie A. Durant ("Durant") sued her former employer, Appellant Northpointe LTC., Ltd. d/b/a Grace Care Center at Northpointe ("Northpointe"), for negligence, gross

negligence, wrongful termination, breach of employment contract, and tortious interference with contract. Over three years later, Northpointe moved to compel arbitration. Following a hearing, the trial court denied Northpointe's motion. This appeal ensued.[1]

In two issues, Northpointe argues the trial court abused its discretion in denying its motion to compel arbitration because (1) there is a valid arbitration agreement between Durant and Northpointe, and (2) Durant failed to satisfy her burden to prove Northpointe waived its right to arbitration.

We reverse and remand.

## Background

Durant worked as a certified nurse aide at Northpointe, a nursing home facility. She alleges that in July 2016, while acting in the course and scope of her employment, she slipped and fell in a hallway where the floor "had been excessively waxed" by a member of Northpointe's staff causing her significant injuries. Durant alleges she sought medical treatment and was diagnosed with "several herniated discs in her back and torn ligament in her knee." According to Durant, Northpointe terminated her employment because her injuries prevented her from returning to work. She alleges she is "totally disabled" and receives Social Security disability payments.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1) ("A party may appeal . . . an order . . . denying an application to compel arbitration . . .").

2

Durant filed suit in July 2018 asserting several causes of action against Northpointe. She alleged that Northpointe (1) negligently failed to inspect and make its premises safe and failed to warn of the slippery floors, and was grossly negligent, (2) tortiously interfered with her contract with her employee disability insurance carrier by failing to complete a claim form, resulting in the insurer's denial of her claim for disability payments, and (3) breached its oral employment agreement with her and retaliated against her by firing her while she was still under her doctor's care for her injuries.

Northpointe filed an answer in October 2018, generally denying Durant's allegations and asserting several affirmative defenses. Northpointe did not identify or reference an arbitration agreement in its answer.

Over three years later, on January 27, 2022, Northpointe filed an Opposed Motion to Compel Arbitration ("Motion to Compel"), asserting that as part of her employment with Northpointe, Durant had entered into a "Mutual Agreement to Arbitrate" ("Agreement"). The Agreement, which Northpointe attached as an exhibit to its Motion to Compel, contained the following language:

> Any matter covered under this Agreement or concerning the legality or interpretation of this Agreement shall be heard and decided under the provisions and authority of the Federal Arbitration Act, 9 U.S.C. § 1 as applicable. For purposes of this Agreement, an employment-related dispute includes, but is not limited to, all disputes, including statutory and common law claims, whether under state, federal or local law, including, but not limited to, theories arising from breach of implied or express contract, implied covenant of good faith and fair

3

dealing, constructive discharge, wrongful discharge, negligence, gross negligence, false imprisonment, fraudulent concealment, worker's compensation, retaliation, intentional infliction of emotional distress, misrepresentation, personal injury, claims arising from work-related activities, unsafe workplace, unlawful discrimination, retaliation or harassment, sexual harassment, violations of Title VII of the Civil Rights Act of 1964, as amended, Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), Family and Medical Leave Act (FMLA), Fair Labor Standards Act, (FLSA), whistle blowing, wrongful termination in violation of public policy, and defamation.  I acknowledge that any employment dispute directly or indirectly affecting my Company shall be subject to binding arbitration, including disputes against supervisors and managers that involve my employment.

Northpointe argued that (1) the Agreement was governed by the Federal Arbitration Act ("FAA"), (2) the Agreement was enforceable based on principles of contract law, and (3) Durant's claims fell within the scope of the Agreement.

Three weeks after filing its Motion to Compel, on February 16, 2022, Northpointe filed a "Submission of Its Business Records Declaration to Support Its Motion to Compel Arbitration" ("Submission") attaching the Agreement and a business records declaration from its custodian of records, Harold Hadley ("Hadley"), authenticating the Agreement.  Hadley averred that the Agreement attached to his declaration was "the original or [an] exact duplicate[] of the original."  Northpointe asserted in its Submission that by filing Hadley's declaration, the Agreement was self-authenticated as a business record under Texas Rule of Evidence 902.

Durant filed a response to the Motion to Compel. She did not argue that Northpointe had waived its right to arbitration. Instead, Durant argued that because Northpointe had failed to present the Agreement to Durant before moving to compel arbitration, Durant was "naturally . . . very concerned relative to the authenticity of the purported document." Durant argued that she needed "to see the original to determine if in fact her lawful signature [was] properly affixed thereto" or if the Agreement's "existence [was] the result of some surreptitious conduct by the Defendant . . . ." because she had only seen a photostatic copy of the document and "[c]opies are easy to manipulate."[2] Durant argued she "did not recognize the purported agreement" and that she had a "good-faith" belief she had not actually signed the Agreement. She explained she wanted to inspect the original Agreement to determine its authenticity. Durant did not submit evidence in support of her response. Nor did she object to Northpointe's filed Submission or the attached Hadley declaration authenticating the Agreement.

The trial court held a hearing on Northpointe's Motion to Compel on February 16, 2022. During the hearing, the trial court asked Northpointe to explain why it had waited over three years to file its Motion to Compel. Northpointe explained that the case had been stagnant since early 2019 "as far as activity from both parties," and that it had gone into "quasi-abatement" in July 2019, when

---

[2] Durant's counsel clarified that she believed "in earnest [that Northpointe's counsel of record] would have nothing to do with such act."

Durant's counsel had, for medical reasons, asked for several continuances.[3] Northpointe explained that it had not "really . . . started looking at records, asking [] clients for records" until October 2021, and that it had just recently identified the Agreement. Northpointe explained that Durant had not served discovery.[4]

In response, Durant's counsel argued that her main concern was that it had been "nearly four years" since inception of the lawsuit and her client had asked whether the Agreement was "a real document." While she conceded she had experienced "health concerns," Durant's counsel argued that had she "known that arbitration was mandatory . . . [she] wouldn't have wasted all this time and money in litigation." Durant's counsel did not explain what costs she had incurred or elaborate further on her statement. Focusing instead on the authenticity of the Agreement, she noted that Durant had yet to see the original of the Agreement, and that Durant was concerned the copy of the Agreement "could be a forgery." Durant's counsel argued she remained concerned with "the authenticity of the document." She stated:

> We don't believe that after four years [Durant] should lose her constitutional right to a jury trial and be forced in front of someone who can make a decision that is not appealable, that she'd be stuck with. And that's our only concern, that it is quite suspicious that at

---

[3]    The trial court granted agreed motions for continuance in August 2019, April 2020, and September 2021.

[4]    The record does not contain any discovery propounded by either party.

6

the 11th hour, there's a document that takes away her constitutional right to a trial[.]

Durant's counsel stated her client could not recall the Agreement. She admitted the signature looked like Durant's signature, but she argued it could be a "cut and paste." Durant did not submit testimony or evidence in support of her allegations.

Northpointe responded that there was no evidence "beside Plaintiff's Counsel's argument that this [Agreement] is not authentic." Northpointe explained that "[p]ursuant to the Rules of Evidence our Arbitration Agreement self-authenticates because it's accompanied with the business declaration." Durant did not respond to this argument. Nor did she object to Hadley's declaration or seek a ruling from the trial court on her authenticity objections.

At the conclusion of the hearing, the trial court judge stated that "[b]ased upon what I have heard today, I am not ordering arbitration in this matter." Subsequently, on March 4, 2022, the trial court entered a written order denying Northpointe's Motion to Compel. The trial court did not make evidentiary findings or state the grounds upon which it denied the motion. This appeal followed.

## Discussion

Northpointe raises two issues on appeal. In its first issue, Northpointe argues the trial court abused its discretion in denying its Motion to Compel because the Agreement is enforceable and "Durant's speculation that she may not have signed the arbitration agreement is insufficient to defeat [its] enforcement." In its

7

second point, Northpointe argues Durant failed to assert the affirmative defense of waiver. Alternatively, Northpointe argues the trial court erred in denying its Motion to Compel because Durant did not establish that (1) Northpointe substantially invoked the judicial process, or (2) she suffered any prejudice as a result.

Durant argues that the "only controlling issue of this appeal" is Northpointe's proffer of a copy, rather than the original, of the Agreement, which according to Durant, does not satisfy Texas Rules of Evidence 1002, 1003, and 1004. She does not address Northpointe's waiver argument. Instead, she argues that "whether there has been a waiver" of Northpointe's right to arbitration is "irrelevant because there can be no waiver issue to discuss, unless and until the burden of the Best Evidence Rule has been met."

## A. Standard of Review and Applicable Law

A party seeking to compel arbitration must establish that (1) a valid arbitration agreement exists and (2) the claims fall within the scope of the agreement.[5] *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603

---

[5] Neither party disputes that the FAA applies to the Agreement. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) ("The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce."). The Agreement states that it is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. Under the FAA, "state law generally governs whether a litigant agreed to arbitrate, and federal law governs the scope of the arbitration clause." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). The parties do not dispute that Durant's claims fall

S.W.3d 385, 397 (Tex. 2020). If the party seeking arbitration satisfies its initial burden, the burden then shifts to the party resisting arbitration to present evidence supporting a defense to the enforcement of the arbitration provision. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Once the burden shifts to the nonmovant, a presumption exists in favor of arbitration. *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied). Absent a valid defense to arbitration, "the trial court has no discretion but to compel arbitration and stay its proceedings once the existence and application of the [arbitration] agreement has been shown." *In re Automatic Partners, Ltd. P'ship*, 183 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry*, 551 S.W.3d at 115 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009)). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Henry*, 551 S.W.3d at 115. Whether an arbitration agreement is enforceable and whether a

---

within the scope of the Agreement. Instead, Durant appears to challenge the existence of the Agreement, an issue we analyze under state law.

party waived its right to arbitration are questions of law that we review de novo. *Id.*

A trial court cannot deny a motion to compel arbitration on a ground not raised by the nonmoving party. *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.). Thus, we can affirm a trial court's order denying a motion to compel arbitration "only if one of the grounds presented by the resisting party is valid." *Id.* When a trial court does not issue findings of fact or conclusions of law to explain its reasons for denying a motion to compel arbitration, we must "uphold the trial court's decision on any appropriate legal theory urged below." *F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC*, No. 08-20-00096-CV, __ S.W.3d ___, ___, 2022 WL 4538870, at *3 (Tex. App.—El Paso Sept. 28, 2022, no pet. h.).

Arbitration cannot be ordered absent a valid agreement to arbitrate. *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 12 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). If the party resisting arbitration raises a genuine issue of material fact over the existence of a valid arbitration agreement, the trial court must conduct an evidentiary hearing. *Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding); *Fitness Entm't Ltd. v. Hurst*, 527 S.W.3d 699, 705 (Tex. App.—El Paso 2017, pet. denied). "The court makes this summary determination based on the parties' affidavits, pleadings, discovery, and

10

stipulations." *Branch Law Firm L.L.P.*, 532 S.W.3d at 12 (citing *Jack B. Anglin*, 842 S.W.2d at 269). The procedure is subject to the same evidentiary standards as a motion for summary judgment. *Id.* (citing *In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding)).

## B.     Existence of Valid Arbitration Agreement

In its first issue, Northpointe argues the trial court abused its discretion in denying its Motion to Compel because a valid arbitration agreement exists and Durant's assertion that she may not have signed the Agreement does not defeat its enforcement. Northpointe argues it established a valid agreement to arbitrate by producing the Agreement bearing Durant's signature and authenticating the Agreement with a declaration from Northpointe's custodian of records. Northpointe argues that a "mere denial" by Durant that she did not sign the Agreement does not create a genuine issue of material fact sufficient to defeat its Motion to Compel. Northpointe notes that Durant "did not rise to the level of outright denying that she signed the arbitration agreement. She merely speculated that the signature 'could be' inauthentic."

During the hearing on Northpointe's Motion to Compel, Durant's counsel argued that "her first question . . . was how can we know this is a real document." She stated that in response to her request to see the original, Northpointe's counsel had only shown her a "photostatic copy" of the Agreement which she argued

"could be a forgery." Durant's counsel argued that it "could be something nefarious that was surreptitiously prepared . . . [b]y the Defendant who has not been fair with this claimant, their employee. So that is the Plaintiff's concern [sic] the authenticity of the document."[6] According to Durant's counsel, Durant told her she did not recall the Agreement:

> That's why she asked if she could look at it. She did tell me it looks like my signature but I cannot be sure this is not a cut and paste. I don't know how they arrived at this. Because she said she never heard the term Arbitration Agreement before I mentioned it to her two days ago.

Northpointe responded there was no evidence the Agreement was not authentic. It further argued that under the Texas Rules of Evidence, the Agreement was self-authenticating because Northpointe had filed a business record declaration from its custodian of records authenticating the Agreement.

On appeal, Durant argues only that the Agreement was inadmissible under the best evidence rule because the original of the Agreement was unavailable for inspection by Durant or the trial court. *See* TEX. R. EVID. 1002. She also argues that the Agreement is not covered by an exception to the best evidence rule. *See* TEX. R. EVID. 1003, 1004. Durant does not cite any cases in her brief or cite to the record in support of her argument.

---

[6] Durant's counsel clarified she was not accusing opposing counsel of "nefarious" activity, "[n]ot by their firm at all."

12

The burden of establishing the existence of an arbitration agreement "is evidentiary and runs with the party seeking to compel arbitration." *DISH Network L.L.C. v. Alexander*, No. 13-20-00240-CV, 2021 WL 3085763, at *3 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, pet. denied) (mem. op.). A party can satisfy its evidentiary burden by submitting a copy of an arbitration agreement authenticated under Texas Rule of Evidence 901. *Id.* (citing TEX. R. EVID. 901(a)). "A document is considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the requirement of self-authentication." *Id.* Rule 901 states in part:

> To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

TEX. R. EVID. 901(a). Rule 902, which addresses evidence that is self-authenticating, states that "business records accompanied by affidavit" are "self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted." TEX. R. EVID. 902(10) (enumerating requirements of business record affidavit or unsworn declaration); *see also Roland's Roofing Co., Inc. v. Nationwide Mut. Ins. Co.*, No. 13-19-00580-CV, 2020 WL 3478658, at *4 (Tex. App.—Corpus Christi–Edinburg June 25, 2020, no pet.) (mem. op.) (stating business records affidavit authenticated copy of arbitration agreement signed by both parties).

13

Pursuant to Texas Rules of Evidence 901(a) and 902(10), Northpointe authenticated the Agreement by submitting a business records declaration from its custodian of records. Northpointe thus met its evidentiary burden to establish the existence of an arbitration agreement. To the extent Durant attempted to challenge the authenticity of the Agreement, Durant failed to put that issue properly before the trial court.

When a party seeks to challenge the authenticity of a signature on a document, Texas Rule of Civil Procedure 93(7) is implicated. Rule 93(7) states that a party must file a verified pleading when asserting a

> [d]enial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. . . . In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved.

TEX. R. CIV. P. 93(7). "[A] mere denial by the nonmovant that [s]he did not sign the [arbitration] agreement, without more, fails to create a genuine issue of material fact." *Knox Waste Serv., LLC v. Sherman*, No. 11-19-00407-CV, 2021 WL 4470876, *8 (Tex. App.—Eastland Sept. 20, 2021, no pet.) (mem. op.). The same is true for statements that a party does not recall signing an arbitration agreement. Such statements, without more, do not raise a fact issue as to the authenticity of the agreement. *In re December Nine Co., Ltd.*, 225 S.W.3d 693, 699 (Tex. App.—El Paso 2006) (orig. proceeding) (holding statements that parties

14

"did not recall" signing forms acknowledging arbitration agreement "[did] not raise a fact issue as to the authenticity of the written instruments").

Durant did not file a verified pleading in response to Northpointe's Motion to Compel or Hadley's declaration authenticating the Agreement. Thus, she failed to contest the authenticity of the Agreement before the trial court. The opinion in *Wright v. Hernandez*, 469 S.W.3d 744 (Tex. App.—El Paso 2015, no pet.) is instructive. In that case, Wright and his law firm were sued by Hernandez, a paralegal, for wrongful termination. 469 S.W.3d at 747. Wright moved to compel arbitration and Hernandez did not respond. *Id.* at 748. Hernandez argued during a hearing that Wright did not authenticate the arbitration agreement or prove that Hernandez's signature on the agreement was genuine. *Id.* at 748-49.[7] The trial court denied the motion to compel. *Id.* at 750.

---

[7]    Wright, the employer and movant, had not signed the arbitration agreement, causing the trial court to consider whether the agreement was a binding contract. *Wright v. Hernandez*, 469 S.W.3d 744, 749 (Tex. App.—El Paso 2015, no pet.). Wright argued that Texas law does not require an employer to sign an arbitration agreement provided there is sufficient evidence to establish a meeting of the minds and that both parties intended to be bound by the agreement. *Id.* The court held Wright's signature was not a condition precedent to the enforceability of the arbitration agreement. *Id.* at 756-57. This issue is not relevant to Durant's arguments on appeal.

Noting that Hernandez had not challenged the "genuineness of her signature on the document" under Rule 93(7), the court of appeals held that the two submitted business records affidavits authenticated the agreement:

> Despite being served with copies of these affidavits authenticating the agreement, Hernandez did not attempt to present any countervailing evidence disputing the truth or validity of any of the statements made in Wayne Wright's supplemental affidavits. Therefore, assuming the affidavits were properly filed and considered by the court, we conclude that they were sufficient, as a matter of law, to authenticate the arbitration agreement.

*Id.* at 752–53. The court of appeals reversed and remanded for entry of an order compelling arbitration. *Id.* at 762.

The decision in *APC Home Health Services, Inc. v. Martinez*, 600 S.W.3d 381 (Tex. App.—El Paso 2019, no pet.) also is illustrative, and its facts are analogous. APC was a home health care provider and its employee, Martinez, was injured while working at a patient's home. *Id.* at 385. She sued APC, which then moved to compel arbitration. *Id.* Martinez opposed the motion to compel arbitration on several grounds, including the fact that the agreement "was only a copy and Martinez questioned its authenticity." *Id.* at 386. She filed an affidavit in support of her opposition to the motion to compel that said, among other things, that she did "not remember signing" the arbitration agreement and did not "remember anything about the document." *Id.* at 387. The court of appeals stated that "[n]ot recalling executing a document is different from denial of execution."

16

*Id.* at 390. The court held that the Texas Rules of Civil Procedure "require a party challenging the authenticity of a signature on a document to file a verified pleading as a prerequisite to contesting execution of the document." *Id.* (citing TEX. R. CIV. P. 93(7)).[8] The appellate court reversed and remanded for the trial court to consider a question not relevant here, after which time the case was to be abated or dismissed while the parties pursued arbitration.[9] *Id.* at 401.

Because Durant did not file a verified denial contesting the signature on the Agreement, we hold she did not properly present the authenticity issue to the trial court. *See, e.g., Wheeler v. Sec. State Bank, N.A.*, 159 S.W.3d 754, 756-57 (Tex. App.—Texarkana 2005, no pet.) (holding authenticity of challenged signature was not before trial court in absence of verified pleading denying execution of promissory note and, accordingly, was not before appellate court); *Gutierrez v. Rodriguez,* 30 S.W.3d 558, 562 (Tex. App.—Texarkana 2000, no pet.) (holding

---

[8]    APC "was prepared to present at the hearing a witness who would confirm the execution of the agreement by Martinez." *APC Home Health Services, Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.). The witness did not testify because Martinez argued she could not recall signing the document, not that she had not signed it. *Id.* In concluding that Martinez had signed the arbitration agreement, the court of appeals observed that Martinez had neither filed a verified pleading to contest the signature nor insisted on the testimony of the witness who would have testified that Martinez had signed the agreement. *Id.* at 390.

[9]    The court of appeals ordered the trial court to consider on remand whether the arbitration agreement's one-year notice provision was unconscionable and should be severed from the agreement, after which the parties were to arbitrate. *APC Home Health Services, Inc.*, 600 S.W.3d at 401.

17

parties did not need to prove authenticity of signatures on deeds where opposing party failed to file verified pleading denying documents' execution).

We further note that even had Durant filed a verified denial contesting the signature on the Agreement, she would not prevail. Durant did not object to Hadley's declaration or seek a ruling from the trial court on her authenticity concerns. Her failure to secure such a ruling from the trial court failed to preserve the issue for our review.[10] *See Branch Law Firm L.L.P.*, 532 S.W.3d at 15 ("Osborn was required to obtain a ruling on his authentication objection to preserve his appellate challenge"); *Williams v. Bad-Dab, Inc.*, No. 01-11-00102-CV, 2012 WL 3776347, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) ("Objections to hearsay, improper authentication, or lack of foundation are defects in form, which require a ruling for appellate review."); *B. Gregg Price, P.C. v. Series 1 - Virage Master, LP*, No. 01-20-00474-CV, 2021 WL 3204753, at *8 (Tex. App.—Houston [1st Dist.] July 29, 2021, pet. filed) (mem. op.) ("[A] defect in the form of the authentication of a document, i.e., a defect in an affidavit attempting to authenticate the attached document, is waived in the absence of an objection and ruling in the trial court.") (citing *In re Longoria*, 470

---

[10] Because the summary judgment standard is applicable in this arbitration context, copies of documents must be authenticated for them to constitute competent evidence. *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Republic Nat'l Leasing Corp. v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986)).

18

S.W.3d 616, 630 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding)); *Segal v. Bock*, No. 01-10-00445-CV, 2011 WL 6306623, at *5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2011, no pet.) (mem. op.) (holding party who neither objected to document's authentication nor secured ruling from trial court on objection waived any complaints on appeal regarding settlement agreement's authenticity).[11]

During the hearing on Northpointe's Motion to Compel, Durant's counsel merely argued, without submitting any evidence, that her client could not recall signing the Agreement and that her signature could be a "cut and paste." These allegations, without more, are insufficient to raise a fact issue on the authenticity of the Agreement. *See In re December Nine Co., Ltd.*, 225 S.W.3d at 699; *Knox Waste Serv., LLC*, 2021 WL 4470876 at *8.

We sustain Northpointe's first issue.

## C. Waiver of Arbitration

In its second issue, Northpointe argues that Durant failed to assert the affirmative defense of waiver in the trial court. Alternatively, Northpointe argues the trial court abused its discretion in denying its Motion to Compel because

---

[11] *But see In re Estate of Guerrero,* 465 S.W.3d 693, 706–07 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding objection to complete absence of authentication is defect of substance and may be raised for first time on appeal). Here, there was not an absence of authentication; rather, Hadley's business records declaration was attached to the Agreement.

Durant did not establish (1) Northpointe substantially invoked the judicial process, and (2) that she suffered resulting prejudice.

### 1. Asserting Waiver as a Defense

Northpointe argues that Durant did not argue waiver of Northpointe's right to arbitration in her written response to the Motion to Compel or during the hearing on the motion. Northpointe argues that during the hearing, Durant "did not specifically discuss whether Appellant had substantially invoked the judicial process, other than generally alleging delay." Thus, according to Northpointe, Durant did not present the issue of waiver to the trial court.

We agree with Northpointe that during the hearing on its Motion to Compel, Durant focused primarily on the authenticity of the Agreement. Durant, however, also argued that she was concerned Northpointe had waited almost four years to move for arbitration, that had she known arbitration was mandatory she "wouldn't have wasted all this time and money in litigation," and that "after four years she should [not] lose her constitutional right to a jury trial and be forced in front of someone who can make a decision that is not appealable, that she'd be stuck with." We hold that these arguments sufficiently raised the defense of waiver. As we ultimately conclude, however, Durant failed to meet her burden to prove the defense.

## 2. Waiver of Right to Arbitrate

There is a strong presumption against waiver, and any doubts are resolved in favor of arbitration. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006); *see also Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 543 (Tex. 2014) ("Proving waiver is a high hurdle due to the strong presumption against waiver of arbitration."); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex. 1998) (noting the "heavy burden of proof" required to establish waiver of the right to arbitration). The waiver analysis involves two queries: whether the party seeking arbitration substantially invoked the judicial process and, if so, whether the resisting party was prejudiced as a result. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 39 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "Waiver . . . asks whether a party has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *In re Citigroup Global Mkts.*, 258 S.W.3d 623, 625 (Tex. 2008) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008)). The party opposing arbitration has the burden to establish waiver. *Henry*, 551 S.W.3d at 116.

### a. Substantially Invoking the Judicial Process

The determination of whether a party has substantially invoked the judicial process "depends on the totality of the circumstances." *G.T. Leach Builders, LLC*

*v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015) (citing *Perry Homes,* 258

S.W.3d at 590-91). The "wide variety" of factors courts consider in determining

whether the judicial process has been "substantially invoked" include:

> (1) how long the party moving to compel arbitration waited to do so;
> (2) the reasons for the movant's delay; (3) whether and when the
> movant knew of the arbitration agreement during the period of delay;
> (4) how much discovery the movant conducted before moving to
> compel arbitration, and whether that discovery related to the merits;
> (5) whether the movant requested the court to dispose of claims on the
> merits; (6) whether the movant asserted affirmative claims for relief in
> court; (7) the extent of the movant's engagement in pretrial matters
> related to the merits (as opposed to matters related to arbitrability or
> jurisdiction); (8) the amount of time and expense the parties have
> committed to the litigation; (9) whether the discovery conducted
> would be unavailable or useful in arbitration; (10) whether activity in
> court would be duplicated in arbitration; and (11) when the case was
> to be tried.

*G.T. Leach*, 458 S.W.3d at 512 (Tex. 2015) (citing *Perry Homes*, 258 S.W.3d at

590–91). No particular factor is dispositive. *RSL Funding, LLC v. Pippins*, 499

S.W.3d 423, 430 (Tex. 2016). Nor must all or most of these factors be present to

support waiver. *Perry Homes*, 258 S.W.3d at 591. "Courts look to the specifics of

each case." *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 516 (Tex.

App.—Houston [1st Dist.] 2022, pet. denied).

### (i)    Delay

The information available to this Court pertains mostly to the first three

factors concerning delay. Durant filed suit on July 3, 2018. Northpointe did not

file its Motion to Compel until January 27, 2022, more than three years after Durant filed suit.

During the hearing on Northpointe's Motion to Compel, Northpointe explained it had not moved to compel arbitration previously because it had only recently found out about the Agreement. It further explained that although the case had been on file for nearly four years, the case had remained largely stagnant for a prolonged period of time. Northpointe explained:

> [T]his case has went [sic] stagnant early on in 2019 as far as activity from both parties. We went into quasi-abatement back in July, 2019, when the Plaintiff's Counsel herself asked for a continuance based on a medical issue. Which we wholly respected. And, candidly, my office, Your Honor, at that point, basically, put the case in abatement. And this case didn't really activate, Your Honor, I'd say until October 2020, plus or minus in relation to after we filed joint motions for continuance because of Plaintiff's health condition. It's another reason why we haven't taken the Plaintiff's deposition. I'm assuming maybe that's why Plaintiff hasn't issued written any discovery.
>
> . . .
>
> [W]hat I'm trying to articulate is that in answering your questions about why we didn't know about the Arbitration Agreement is simply because when we put the case in a continuance because of Plaintiff's medical condition –
>
> . . .
>
> So let's fast forward to October 21 and not until that time is really when our office started looking at records, asking our clients for records. Because I didn't even realize, Your Honor, that Plaintiff's [sic] had not issued written discovery.

23

In response, Durant's counsel argued that her main concern was that it had been "nearly four years" since inception of the lawsuit and her client had asked whether the Agreement was "a real document." She conceded she had experienced "health concerns" but noted that she would not have "wasted all this time and money in litigation" had she known arbitration was mandatory. Durant argued that after four years, she should not lose "her constitution right to a jury trial."

### (ii)   Discovery

During the hearing on Northpointe's Motion to Compel, Northpointe stated that Durant had not served written discovery and Durant did not correct him. The parties did not discuss whether Northpointe had served discovery, and the record lacks discovery from any party.[12]  Northpointe also explained that neither party's deposition had been taken.

### (iii)   Affirmative Relief and Pretrial Matters

The record is silent as to whether Northpointe filed any dispositive motions. And the record does not reflect any affirmative claims for relief filed by Northpointe. Northpointe argues in its brief that it did not assert affirmative claims or file any dispositive motions, and Durant does not dispute that statement. And

---

[12]   The record contains a page from the "Trial Court Activity Inquiry Screen" that reflects the March 24, 2021 denial of an order compelling discovery. There is no information as to which party sought the discovery.

24

Durant did not argue or provide any information regarding pretrial activity, or whether any such activity in the trial court would be duplicated in arbitration.

### (iv) Time and Expense

There is no information in the record regarding the time and expense the parties spent on the litigation until Northpointe moved to compel. Nor did Durant refer to these matters during the hearing, except to state that had she "known that arbitration was mandatory shortly after attempting to make [a] worker's compensation claim, [she] wouldn't have wasted all this time and money in litigation." Durant did not elaborate on the amount of time or money spent.

### (v) Trial Setting

Northpointe stated in a letter brief to the court that the parties had agreed to three joint motions for continuance from 2019 to 2021 because of the COVID-19 pandemic, Durant's counsel's health issues, and "resulting discovery complications." The most recent trial setting in the appellate record is June 27, 2022. Durant did not argue she had prepared for trial in anticipation of this trial setting or that she anticipated proceeding to trial on that date.

Considering all of the factors in this case, the most significant is undeniably the first one: the period of delay in moving to compel arbitration. Northpointe did not file its Motion to Compel until three and one-half years after suit was filed. But delay in moving to compel is not the end of the analysis. "Generally, delay

alone does not establish waiver." *Turnbull Legal Group, PLLC v. Microsoft Corp.*, No. 01-20-00851-CV, 2022 WL 14980287, at *9 (Tex. App.—Houston [1st Dist.] Oct. 27, 2022, no pet. h.) (mem. op.) (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding)); *see also SEB, Inc. v. Campbell*, No. 03-10-00375-CV, 2011 WL 749292, at *6 (Tex. App.—Austin Mar. 2, 2011, no pet.) (mem. op.) ("[D]elay alone is generally not sufficient to establish waiver.") (holding waiver did not occur when motion to compel arbitration was filed forty-five months after suit was filed).[13]  Moreover, courts have found there to be no

---

[13]  Courts have found waiver when there were shorter periods of delay, but as noted, waiver is generally not based on delay alone. *See, e.g., Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 517 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (finding waiver when arbitration was sought twenty-six months after filing suit and movants knew about arbitration "from the outset" and engaged in "significant" discovery and motion practice before seeking to compel arbitration); *Perry Homes v. Cull*, 258 S.W.3d 580, 596 (Tex. 2008) (finding waiver where party delayed request for arbitration fourteen months after filing suit and after "most of the discovery" had been completed when motion to compel was filed); *Menger v. Menger*, No. 01-19-00921-CV, 2021 WL 2654137, at *5–6 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.) (finding party's six-month delay before requesting arbitration supported finding of waiver when movant knew of arbitration "long before" filing motion to compel and non-movant had produced nearly 1,400 pages of documents in its discovery responses and had incurred more than $77,000 in attorney fees); *Read v. Sibo*, No. 14-18-00106-CV, 2019 WL 2536573, at *5 (Tex. App.—Houston [14th Dist.] June 20, 2019, pet. denied) (mem. op.) (finding party's approximate twenty-three-month delay in seeking arbitration supported finding of waiver because "much had happened in the case," including granting of dispositive motions and appeal of interlocutory order); *Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 649 (Tex. App.—Dallas 2011, pet. denied) (finding party's thirteen-month delay before invoking arbitration supported finding of waiver where party seeking arbitration had propounded nearly 200 discovery requests, moved to compel discovery responses, cross-examined non-movant during at least three evidentiary hearings, and arbitration motion was filed after discovery ended); *In re Christus Spohn Health Sys. Corp.*,

waiver when the parties engaged in significantly more pretrial activity than they did here. *See, e.g, Granite Const. Co. v. Beaty*, 130 S.W.3d 362, 367 (Tex. App.—Beaumont 2004, no pet.) (holding no waiver of arbitration right despite filing of motion to transfer venue, propounding of written discovery, preparation of discovery responses, presentation of two witnesses for deposition, and participation in unsuccessful mediation).

In light of our review of the relevant factors and the facts of this case, we conclude Durant failed to establish that Northpointe substantially invoked the judicial process.

### b. Prejudice

Even if there was evidence Northpointe substantially invoked the judicial process, the analysis would not end there. The second prong of the waiver analysis, prejudice, must also be established. "[T]he party opposing arbitration . . . must prove that it has been prejudiced by establishing that the party seeking to compel arbitration . . . has substantially invoked the litigation process to the opposing party's 'detriment.'" *Okorafor*, 295 S.W.3d at 38; *see also Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995) (orig. proceeding) ("A

---

231 S.W.3d 475, 480–81 (Tex. App.—Corpus Christi–Edinburg 2007, orig. proceeding) (finding waiver after fourteen months of litigation, "voluminous" discovery, at least seventeen depositions, and resetting of trial date three times).

party does not waive a right to arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice.")

In determining waiver of the right to arbitrate, detriment or prejudice to the opponent means "inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *Okorafor*, 295 S.W.3d at 38 (citing *In re Fleetwood Homes*, 257 S.W.3d 692, 694 (Tex. 2008) (orig. proceeding) (citing *Perry Homes*, 258 S.W.3d at 596)); *see also G.T. Leach*, 458 S.W.3d at 515 ("Prejudice may result when a party seeking arbitration first sought to use the judicial process to gain access to information that would not have been available in arbitration . . . ."); *Courtright*, 647 S.W.3d at 516 ("Such inherent unfairness may be manifested 'in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'") (quoting *Perry Homes*, 258 S.W.3d at 597).

Durant did not address prejudice either at the trial court or in her appellate brief. The vast majority of her arguments, below and on appeal, pertain to the authenticity of the Agreement. At most, during the hearing on Northpointe's Motion to Compel, Durant argued that had she known arbitration was mandatory, she would not have "wasted all this time and money in litigation." This statement, without more, is insufficient to establish prejudice or that Northpointe substantially

28

invoked the judicial process to her detriment. *See Structured Capital Res. Corp. v. Arctic Cold Storage, LLC*, 237 S.W.3d 890, 896 (Tex. App.—Tyler 2007, no pet.) ("Generalized complaints about delay and expense, absent explanations and evidentiary support, will not establish prejudice."); *IBS Asset Liquidations LLC v. Servicios Multiples Del Norte SA de CV*, 419 S.W.3d 573, 575 (Tex. App.—San Antonio 2013, pet. denied) (same); *see also Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 139 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (finding no showing of prejudice in absence of evidence showing "how the delay, its fees and costs, the volume of discovery, or the information . . . obtained in discovery had prejudiced" the party resisting arbitration); *Texas Residential Mortg., L.P. v. Portman*, 152 S.W.3d 861, 864 (Tex. App.—Dallas 2005, no pet.) (holding prejudice not established when party resisting arbitration showed "absolutely no evidence" of prejudice when her counsel failed to identify work done or costs incurred that would not have occurred in anticipation of arbitration); *Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 514 (Tex. App.—San Antonio 2004, orig. proceeding) (holding prejudice not established when party resisting arbitration failed to submit evidence in support of general allegations of prejudice by "increased and 'destructive' discovery expenses").

"Showing prejudice is generally an evidentiary burden." *Williams Indus.*, 110 S.W.3d at 135. Durant did not make any other argument that could be

29

construed as addressing prejudice in the trial court or in this Court, nor did she adduce any evidence to establish she was prejudiced. *See id.* at 141 (holding party resisting arbitration "failed to carry its heavy burden of showing actual prejudice because it offered no evidence in support").[14] We thus hold Durant did not meet her evidentiary burden to establish prejudice.

We sustain Northpointe's second issue.

## Conclusion

We reverse the trial court's order denying Northpointe's Motion to Compel. We remand for the trial court to sign an order (1) compelling the parties to arbitrate Durant's claims and (2) staying the proceedings pending completion of the arbitration.


Veronica Rivas-Molloy
Justice


Panel consists of Chief Justice Radack and Justices Countiss and Rivas-Molloy.

---

[14] Durant declined to discuss waiver in her appellate brief, stating that "there can be no waiver issue to discuss, unless and until the burden of the Best Evidence Rule has been met."